Milton W. KOPFF, doing business as M. Kopff Plumbing & Heating Company (Plaintiff), Respondent,

v.

Robert E. DEVES (Defendant), Appellant.

No. 30135.

St. Louis Court of Appeals.

Missouri.

June 16, 1959.

Jesse E. Bishop, St. Louis, for appellant.

Flynn, Parker & Badaracco, St. Louis, for respondent.

WOLFE, Presiding Judge.

This is a suit for loss sustained by breach of an alleged oral contract. Plaintiff alleged that he was employed by the defendant and his wife to install plumbing, baths, toilets, and other associated fixtures in twenty-nine houses which were to be erected by the defendant in a new subdivision. Plaintiff did the installation and supplied the items on six of the houses but was not

permitted to proceed with the others. There was a directed verdict and judgment for defendant Anna L. Deves, the wife of Robert E. Deves, and no appeal was taken therefrom. Defendant Robert E. Deves counterclaimed for loss allegedly sustained by reason of poor work done in the six houses mentioned. There was a judgment in favor of the plaintiff on the defendant's counterclaim and in favor of the plaintiff on his cause of action in the sum of $2,200. Defendant Robert E. Deves appealed.

Milton R. Kopff testified that he had been in the plumbing business for a number of years and that late in 1954 Robert E. Deves approached him on the subject of doing some plumbing work. Deves was planning on developing a tract of ground known as Hill Top Haven. He took Kopff out to the tract of land known by that name and told Kopff that he was going to build twenty-nine houses. Deves showed Kopff the plans and specifications for the houses that were to be constructed and asked him to submit bids on the plumbing work and fixtures which were to be used in them.

Kopff said that he sent Deves on January 11, 1955, a written proposal to do the plumbing work on twenty-seven houses. He explained the variance in the number of houses to be built by saying that at one time Deves told him there would be twenty-seven and at another time he told him there would be twenty-nine. Each of the houses to be built had the same specifications for plumbing fixtures and Kopff proposed to do the work at the price of $1,500 per house. This proposal was in writing and contained the following sentence: "This contract is void unless signed and returned to plumber within five days from the above date."

The proposal was never signed but Kopff testified that Deves told him to go ahead with the work. It was upon that basis that Kopff did the plumbing work on six of the houses built by Deves. He was paid for the work done and the materials furnished in these houses. The payment on five of them was by check and the amount due him on the sixth was credited to him on the purchase price of one of the houses which the plaintiff bought from Deves.

By August, 1955, the six houses had been completed and the plumbing installed. There were extras or changes made in respect to the plumbing as the work in these houses progressed. On one house the plaintiff was paid $1,795.95, on another $1,614.98, and on still another $1,926.70. The amount paid on the two remaining houses for which checks were issued was slightly less in each case than $1,500. In addition to the work on these six houses the plaintiff laid three water lines across West Deves Drive at the request of the defendant and it is conceded that he was never paid for laying these water lines.

The defendant had some conversation with the plaintiff regarding the plumbing work in the remaining houses and under the date of August 4, 1955, he submitted another proposal which was the same in all respects as the proposal submitted in January except that a smaller water heater was to be installed and the price per house was reduced from $1,500 to $1,450. In September of 1955 he was told not to proceed any further with work in the subdivision and he testified that he was ready and willing at all times to go ahead with the work.

As to the question of his damages, the plaintiff was permitted to testify over the objection of the defendant that he estimated his profit on the six houses that he had completed at $350 per house. Again over the objection of the defendant he was permitted to estimate that he would have made a similar profit on each of the remaining houses had he been permitted to do the plumbing work in them.

The defendant's evidence was to the effect that he and his wife held title to the subdivision known as Hill Top Haven. He was a builder and intended to build houses on all of the lots into which the subdivision had been divided. In January of 1955 he had arranged financing for only six houses and he submitted the plans and specifica-

tions for those houses to various contractors among whom was plaintiff Kopff. The defendant had a discussion with Kopff about the plumbing and according to his testimony he told Kopff that he was first going to build six houses for which he had finances and that he would then build the remainder of the houses which would number twenty-eight in all. He testified that Kopff said he would do the work in six houses and that they would discuss the others later. He told Kopff in February to go ahead with the work in the six houses in accordance with the proposal made. As the work progressed Kopff was paid.

A mechanical ditch digger was being used to prepare for laying pipes across a projected street. Deves asked Kopff to lay the water pipes for three additional houses while the ditch digger was there. This was done by Kopff and Deves said that he had never paid Kopff for laying these three pipes because he had never been billed for them. Deves said that in August he secured financing for the balance of the houses and asked Kopff to bid on the work. He said that in response to this request Kopff submitted his second proposal of August 4, 1955, and that it was never accepted because Deves considered it too high and because the previous work done by Kopff was unsatisfactory.

There was considerable evidence on behalf of defendant that there were defects in some of Kopff's work and upon this the defendant's counterclaim was predicated. There is no contention, however, that there was any error committed in the submission of the counterclaim or that the verdict and judgment thereon was erroneous in any respect, so we will not set out the evidence in relation to it. As stated, the judgment on the plaintiff's cause of action was for the sum of $2,200.

The first contention raised by the defendant-appellant is that the court should have directed a verdict for the defendant on the plaintiff's cause of action. One of the reasons asserted is that the plaintiff-

respondent's evidence did not show an acceptance in writing as required by his written proposal. As stated, the proposal provided that the contract was void unless signed by Deves and returned within five days.

We are cited to Shortridge v. Ghio, Mo. App., 253 S.W.2d 838, loc. cit. 845, which deals with a contract for the sale of real estate. In that case the court stated:

"If an offer prescribes the place, time or manner of acceptance its terms in this respect must be complied with in order to create a contract."

But the court also went on to say, " * * * a verbal acceptance is insufficient *unless it is assented to by the offerer * * *.*" There is no doubt that the defendant told the plaintiff to proceed with the work after he made the offer and he did proceed. The defendant does not dispute this in any way except to say that he agreed orally only to let Kopff work on the six houses. The petition does not allege a contract in writing but an oral contract so the issue of what was agreed to orally was a matter for the jury. The contention that because the offer was not signed by Deves made invalid the oral contract embodying the offer, is without merit.

It is next asserted that the written offer of August 4, 1955, made by the plaintiff, conclusively refuted his contention that his proposal of January 11, 1955, had been orally accepted. We are cited to no authorities for this proposition. The new offer was as consistent with an effort to arrive at a solution of differences that had arisen between the parties, as it was with the view that no contract existed and that the plaintiff was trying to arrive at one by a new offer. We therefore conclude that this did not refute the statement that the first offer had been orally accepted.

The third reason defendant advances in support of his contention that there should have been a directed verdict for the defendant is that the plaintiff of-

fered no admissible evidence of damages suffered by reason of the alleged breach of the contract. The defendant assigns as another error, in the following point, the fact that the court permitted the plaintiff to testify that he made an estimated profit of $350 on each of the houses upon which he worked and that he would have made a profit of a similar amount on each of the remaining houses. These points will be considered together as the admissibility of the evidence complained of must be determined before it can be said that there was no competent evidence of damages.

The evidence as it relates to the question of damages consists of the following questions asked the plaintiff and the answers given:

"Q. Well, anyway, with respect to the six homes that you installed the plumbing equipment in, what would you estimate that your profit was on those six, each home?"

The following objection was made by defendant's counsel:

"I am going to object to that question. It is far too general. It is calling for a conclusion and not the best evidence. I mean the items would have to be detailed."

This objection was overruled and the plaintiff answered: "Three hundred fifty dollars each building." He then was permitted to testify that the remaining houses had the same specifications for plumbing and after that he was asked what profit he would have made on the remaining houses had he been permitted to do the work. Counsel for the defendant again objected on the ground that the question called for an answer wholly speculative and that no proper foundation had been laid to show what the profit would have been.

In the case of Tnemec Co. v. North Kansas City Development Co., Mo., 290 S.W. 2d 169, loc. cit. 174, the Supreme Court stated:

"Not only was it essential that plaintiff should show it suffered damages as a result of the alleged delay, but the law is also well settled that damages may be recovered for loss of profits due to the breach of a contract if the evidence is sufficiently certain and definite to warrant the jury in estimating their extent. This court and the courts of appeals of this state have been strict in evaluating the sufficiency of the evidence warranting a recovery of damages for loss of profits. Our courts have refused to permit a jury to speculate, without a substantial basis, as to what might be probable or expected profits as an element of damages."

Evidence of the cost of doing the plumbing work and supplying materials required was certainly susceptible of proof. This would have constituted sufficient evidence, for all the jury would have to do is to subtract the cost of completing the work from the contract price to arrive at the anticipated profit (Sides v. Contemporary Homes, Mo.App., 311 S.W.2d 117), but they were not afforded any such guide by the evidence presented. Here the plaintiff relied upon what he estimated his profit to have been on the first six houses. This was not satisfactory evidence of what the profit had been when it was subject to exact proof. Exact proof should have been required. Any award of anticipated profit based upon such evidence would be merely conjectural and speculative. Morrow v. Missouri Pacific Ry. Co., 140 Mo.App. 200, loc. cit. 214, 123 S.W. 1034, loc. cit. 1039. To allow plaintiff to simply state what his profits were is not competent evidence but a mere conclusion unsupported by facts. This is particularly true under the facts before us for Kopff was paid different amounts on the houses completed. Viernow v. City of Carthage, 139 Mo.App. 276, 123 S.W. 67.

It is asserted by the plaintiff that this evidence was admitted without objection, but the record does not bear him out on

this. It is true that some questions went in without objection but only after the defendant had previously objected to similar testimony. In order to preserve a point it is not necessary to make repeated objections on the same ground after the objection has been once overruled. Chester v. Shockley, Mo., 304 S.W.2d 831. It must be concluded that the court erred in overruling the defendant's objection to the evidence mentioned and that there was not sufficient proof of damages.

This, however, does not mean that the case should be reversed outright as we are urged to do by the defendant, who relies on Tnemec Co. v. North Kansas City Development Co., supra. In that case the court not only found a lack of proof of damages but also found no evidence to support plaintiff's theory that the alleged breach of contract could have caused damages. We conclude therefore that the case should be remanded as was done in the cases of Viernow v. City of Carthage, supra, and Morrow v. Missouri Pacific Ry. Co., supra.

■ Since the case must be retried we should also consider the objections raised to two instructions given. The first was a verdict-directing instruction. This directed a verdict without requiring a finding that the plaintiff had been damaged, that is, that the contract price exceeded the plaintiff's anticipated cost of completing the work. An instruction which purports to cover the entire case and direct a verdict must hypothesize every fact· essential to a recovery and because of the noted omission the instruction complained of was erroneous. Sides v. Contemporary Homes, Mo.App., 311 S.W.2d 117; Smalley v. Wunderlich, Mo.App., 62 S.W.2d 919.

■ Instruction No. 3, covering the measure of damages, is also erroneous as it offered no proper guide upon which the jury could determine the damages. As we have indicated above, the measure of damages is the amount, if any, by which the contract price exceeds the anticipated cost of completing the work. Morrow v. Missouri Pacific Ry. Co., 140 Mo.App. 200, 123 S.W. 1034.

For the reasons stated, the judgment is reversed and the cause remanded for a new trial.

RUDDY, J., and MARSHALL CRAIG, Special Judge, concur.