**George A. SHUTT, et al., Appellants,**

v.

**CHRIS KAYE PLASTICS CORPORATION,
Respondent.**

No. 80290.

Supreme Court of Missouri,
En Banc.

Feb. 24, 1998.

James F. Mauze, Timothy Belz, St. Louis, for Appellants.

Douglas W. King, Charles A. Weiss, St. Louis, for Respondent.

HOLSTEIN, Judge.

Chris Kaye Plastics Corporation leased property in St. Louis County, Missouri, from Shutt–Kresko, a Texas general partnership. After the lease expired, Shutt–Kresko brought suit against its former tenant to recover cleanup costs it incurred after the termination of the lease. Shutt–Kresko alleged breach of the lease contract and statutory waste. A jury found for Kaye Plastics on both counts. Following opinion by the Missouri Court of Appeals, Eastern District, this Court accepted transfer. *Mo. Const. art. V, sec. 10.* The judgment is affirmed.

Shutt–Kresko owns a forty-five thousand square foot office and warehouse building in St. Louis County. On February 19, 1969, Shutt–Kresko and Kaye Plastics entered into a lease for the northern twenty thousand square feet of that building. The parties extended the lease period in 1973 and subsequently extended and modified the lease by five addenda. These addenda made several modifications to the lease, including extending the term of the lease to March 31, 1994. The third paragraph of the fourth addendum, entered into on June 1, 1993, generally released the tenant from liability for repairs and restoration of the property. The paragraph reads as follows:

Tenant shall not be responsible or liable, subject to the provisions at the end of this paragraph, for (1) repairing damage to columns and column dry walls, (2) removing small warehouse addition installed by Tenant, (3) sealing or closing the two existing warehouse openings between 2329 and 2343 Chaffee Drive spaces, (4) repairing or replacing the roof or any part thereof, (5) removing or repairing any electrical wiring, conduits, devices or equipment, (6) repairing any exterior or interior walls, (7) repairing any windows or doors, (8) repairing any of the flooring, (9) repairing any loading docks, (10) repairing any of the foundation, (11) repairing any parking or drive areas, (12) removing demountable partitions, (13) removing carpeting, (14) removing the air vent installed by Tenant, (15) or otherwise restoring the premises to their original condition; provided, Tenant at its option may remove demountable partitions and electrical equipment and devices. However, tenant is not relieved of any responsibility it may have for repairing any major damage to the premises caused by it between 6–1–93 and 12–31–93, or for removing any equipment it installs

between 6–1–93 and 12–31–93 for which it may be responsible for removing. Exhibit A hereto, prepared by Trammel Crow, is intended by Trammel Crow to describe the general nature of existing conditions. It is not intended to be an exhaustive or detailed list or description of every condition. Nothing in the aforementioned Paragraph 3 or elsewhere relieves Tenant of any responsibility for the testing or remediation of any environmental issues which now exist or shall occur between 6–1–93 and 12–31–93. Any structural repairs which may become necessary as part of such testing or remediation shall be at Tenant's sole expense.

The fifth and final addendum to the lease made no reference to the condition of the property or the liability of the parties for its restoration.

Throughout the lease term, Kaye Plastics used the facility for manufacturing molded plastic products. The injection molding machines used by Kaye Plastics employed a hydraulic powered apparatus. Periodically, Kaye Plastics changed the hydraulic oil used in these machines. The oil would be dumped into a container located on the northeast corner of the building. The container emptied into a pipe that passed through the wall of the building into the top of an above-ground tank located outside in the parking lot.

Kaye Plastics asserted that the used oil tank did not leak or spill any oil throughout its use. However, Kaye Plastics admitted that on at least one occasion the pipe that passed through the wall into the tank cracked and leaked used hydraulic oil. On another occasion, hydraulic oil leaked from the hydraulic arm of a large trash compactor provided by Shutt–Kresko. Kaye Plastics provided testimony that its employees used oil absorbent material to clean up both spills.

After Kaye Plastics vacated the premises, Shutt–Kresko hired Environmental Operations, Inc., to conduct a Phase I environmental assessment of the property. Environmental Operations found "[e]vidence of petroleum hydrocarbon contamination ... both inside and outside the building" and recommended further investigation.

Environmental Operations next conducted a limited Phase II assessment. Based upon these assessments, Environmental Operations recommended that Shutt–Kresko excavate the soil in the "impacted" area which included tearing up part of the parking lot. Environmental Operations also did the excavation work and removed six hundred eighty-four cubic yards of material and backfilled the area. At trial, Environmental Operations admitted that the soil condition did not violate any government regulations or orders and no agency required Shutt–Kresko to remove the soil it excavated.

Shutt–Kresko also alleged that Kaye Plastics leaked oil inside the building, causing damage to the floor. Shutt–Kresko alleged that it attempted to remediate the problem but needed to tear up and replace part of the concrete flooring.

Shutt–Kresko brought suit against Kaye Plastics, seeking to recover its costs. Shutt–Kresko submitted to the jury a breach of contract claim and a claim for statutory waste. For the breach of contract claim, the trial judge modified Missouri Approved Instruction (MAI 5th) 26.02 by adding a second paragraph to the model instruction, which read:

Your verdict must be for Plaintiffs if you believe:

First, Defendant deposited oil on Plaintiffs' property, and

Second, *such oil deposits constitute an environmental issue*, and

Third, because of such oil deposits, Defendant's Lease Agreement obligations were not performed, and

Fourth, Plaintiffs were thereby damaged.

(emphasis added)

The jury found for Kaye Plastics on both counts. Shutt–Kresko presents only one issue on appeal. It contends that the trial court committed reversible error when it modified MAI 5th 26.02 relating to the breach of contract claim to include the additional requirement that plaintiffs could prevail only if the jury found that the alleged oil deposits left by Kaye Plastics constituted an "environmental issue."

Rule 70.02(b) specifies that an MAI that is "applicable in a particular case ... shall be given to the exclusion of any other instruction on the same subject." Rule 70.02(c) reiterates the requirement by stating: "The giving of an instruction in violation of a provision of this Rule 70.02 shall constitute error." However, Rule 70.02(b) allows an MAI to be modified "to fairly submit the issues in a particular case."

The parties agree that MAI 5th 26.02 was the best instruction from which to start. However, Shutt–Kresko claims that the modification was error because it did not fairly submit the issues to the jury but instead prejudiced its case. The asserted prejudice is that the "environmental issue" proviso was unfairly highlighted and that other provisions in the original lease requiring Kaye Plastics to restore the premises to its original condition were ignored.

 Parties to a contract may modify or waive their rights under it or engraft new terms upon it. *Zumwinkel v. Leggett,* 345 S.W.2d 89, 93 (Mo.1961). Even though the original lease contained several provisions requiring Kaye Plastics to maintain the premises or restore them to their original condition, Shutt–Kresko released Kaye Plastics of this duty in item fifteen of paragraph three of the fourth addendum. In that paragraph, the parties also agreed that notwithstanding the release of liability, Kaye Plastics would remain liable for "major damage to the premises caused by it between 6–1–93 and 12–31–93" and for the "testing and remediation of any environmental issues." There was no claim of major damages during the specified time period. Thus, Kaye Plastics was not liable for breach of contract absent a finding that there had been oil spills that contaminated the property so as to constitute an environmental issue.

 The fact issues peculiar to this case were whether oil spills contaminated the soil and, if so, whether the spills constituted an environmental issue. The instruction hypothesized those ultimate contested fact issues. When an approved instruction does not fit the case precisely, modifications must be made. *MAI 5th, Committee Comment.* Because of the unique factual issues in this case created by the fourth addendum, MAI 5th 26.02, as drafted, did not precisely fit the case. Thus, the modification of MAI 5th 26.02 was required to fairly submit the issues to the jury and was not error.

 Shutt–Kresko also argues that the release of liability in the fourth addendum was limited to the list of items attached by the parties. This argument borders on frivolous. The addendum states that the attached exhibit "is not intended to be an exhaustive or detailed list or description of every condition."

No issue was made either before the trial court or on appeal that the term "environmental issue" was too imprecise and should have been defined or that a more precise term should have been used. The Court does not address that issue.

For the above reasons, the judgment is affirmed.

All concur.