Gerald R. GORMAN and Michelle Gorman, Respondents,

v.

WALMART STORES, INC. d/b/a Hypermart USA, Appellant.

No. WD 57307.

Missouri Court of Appeals, Western District.

Submitted March 3, 2000.

Decided June 6, 2000.

---

Robert M. Kroenert, Kansas City, for appellant.

Lloyd L. Messick, Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., ROBERT G. ULRICH and JAMES M. SMART, Jr., JJ.

PER CURIAM.

Wal–Mart Stores, Inc. ("Wal–Mart") appeals a jury verdict in favor of Gerald Gorman in a case arising out of a fall Gorman took on the ice in front of its Hyper–Mart Store in Kansas City, Missouri. The jury awarded Gorman $41,-250.00. In this appeal, Wal–Mart contends that the trial court erred in giving the verdict directing instruction because (1) it improperly failed to include a "tail" from MAI 37.01 or from MAI 22.03 referring to defendant's affirmative defense instruction, and (2) it improperly placed a larger burden on the defendant than is required by Missouri law. Wal–Mart further complains that the trial court erred when it failed to sustain a directed verdict in its favor, erred in ruling that the defendant's affirmative defense instruction should not have been given, and erred in admitting portions of Gorman's federal tax returns into evidence as proof of lost profits. The judgment is affirmed in part and reversed in part.

## Factual Background

On December 12, 1996, Gerald R. Gorman drove to a shopping mall to shop. The roads to the mall were slippery because of freezing rain that had fallen the day before. Gorman noted that the mall's parking lot was a sheet of ice and he used extra precautions when walking to and from his car. Gorman left the mall about 11:20 a.m. or 11:30 a.m. and drove to a nearby Hyper–Mart. He noted that the Hyper–Mart parking lot was icy, but that the sidewalk in front of the store appeared to be free of ice. Gorman realized that he was mistaken about the condition of the sidewalk when he noticed that he was standing on a glaze of ice. Shortly thereafter, Gorman slipped and fell on his back.

After his fall, Gorman entered Hyper–Mart and did some shopping. He mentioned the ice and his fall to a greeter, and was told the lot was being treated. However, Gorman never noticed anyone working on the lot. Gorman went home. His wife insisted that he go to the hospital. Gorman arrived at Belton Research Hospital at approximately 2:30 p.m. At this point Gorman notified Hyper–Mart's assistant store manager, Randy Kutscher, of the accident. Gorman was eventually diagnosed with a fractured kneecap, which had to be surgically repaired.

Gorman filed suit against Wal–Mart. Trial on the matter was held February 1, 1999, and February 2, 1999. At trial, Allen Tolley, an employee of Phillips Lawn and Tree Service ("Phillips"), testified that he began applying salt to the parking lot at approximately 11:00 a.m. on the day of

the accident, although he had no responsibility for the sidewalks. The deposition of Dale Murphy, the store manager, was read into the record at trial. Murphy had no personal knowledge of the condition of the sidewalk and was not at the store on the day in question. He testified that if Phillips began applying salt to the parking lot at 11:00 a.m., there was "no question" that the sidewalk had been treated by Hyper-Mart employees prior to that time. He believed that ice melt would have been applied to the sidewalk prior to Gorman's accident.

Kutscher testified that after receiving Gorman's telephone call informing him of the accident, he walked outside the store in the area where Gorman fell. His observation of the area at about 2:30 p.m. or 3:00 p.m. showed a row of piled ice and snow against the building, indicating someone had been shoveling snow. Kutscher testified that maintenance of the sidewalks was the duty of Wal–Mart employees and that if the parking lot had been salted between 11:00 a.m. and 11:30 a.m., the sidewalks would have been done about the same time. According to Kutscher's testimony, a glaze on the sidewalk was considered an unacceptable condition according to Wal–Mart's safety standards.

The trial court denied Wal–Mart's motion for directed verdict in which Wal–Mart argued that it had not breached any duty owed to Gorman because the condition that caused the accident was a generally prevailing weather condition.

The jury was given Instruction No. 9:

In your verdict you must assess a percentage of fault to defendant if you believe:

First, there was ice on the side walk of defendant's store and as a result the side walk was not reasonably safe, and

Second, defendant knew or by using ordinary care could have known of this condition, and

Third, defendant failed to use ordinary care to remove it, and

Fourth, as a direct result of such failure, plaintiff Gerald Gorman sustained damage.

Wal–Mart offered a modified damage instruction for Instruction No. 9., requesting that the third hypothesis submitted be changed to "defendant failed to use ordinary care to make the sidewalk reasonably safe." It argued that the reference to a duty to *remove* the ice (as opposed to making it safe) imposed a higher standard on the defendant than required by law. The court declined to modify the instruction.

An affirmative defense instruction, Instruction No. 12, was given but contained no reference to Instruction No. 9. Instruction No. 12 stated:

You must not assess a percentage of fault to defendant if you believe that at the time plaintiff Gerald Gorman fell, there existed throughout the City of Kansas City a general condition of ice, and the condition of defendant's sidewalk was not a special isolated condition.

The jury returned a verdict in favor of Gorman for $41,250.00. Wal–Mart moved to set aside the verdict, to direct a verdict in its favor and for a new trial. In denying the motion, the trial court held that Wal–Mart had not been entitled to the affirmative defense instruction (Instruction No. 12) and therefore was not prejudiced by the failure to include a tail on Instruction No. 9 referring to the affirmative defense instruction.

Wal–Mart appeals.

### Instructional Error—Affirmative Defense

In its first point, Wal–Mart contends that the trial court erred in giving Instruction No. 9 because that instruction failed to include the tail language from MAI 37.01 [1] "unless you believe you must not

1. 37.01 [1986 New] Comparative Fault—Verdict Directing Modification

assess a percentage of fault to defendant by reason of Instruction No. 12" or language from MAI 22.03[2] "unless you believe plaintiff Gerald Gorman is not entitled to recover by reason of Instruction No. 12." Instruction No. 12 was an affirmative defense instruction. Instruction 9 and Instruction 12 directly conflicted because Instruction 12 submitted a complete defense. Without the language in Instruction No. 9, Wal–Mart argues, the jury was prevented from considering its affirmative defense. Wal–Mart also claims that the defense's objections at trial were specific enough to preserve this point for review or, in any event, the omission of a tail in the instruction was plain error.

Gorman contends that Wal–Mart has waived review of this point. Rule 70.03 requires that a party make a specific objection to jury instructions prior to submission to a jury:

> Counsel shall make specific objections to instructions considered erroneous.

> No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Counsel need not repeat objections already made on the record prior to delivery of the instructions. The objections must also be raised in the motion for new trial in accordance with Rule 78.07.

Wal–Mart did not make the specific objection it now urges in this appeal.[3] Thus, Wal–Mart did not preserve its present contention that Instruction No. 9 was erroneously given because it omitted the tail language which would have referred to the affirmative defense instruction. *Emery v. Wal–Mart Stores, Inc.*, 976 S.W.2d 439, 445 (Mo. banc 1998); *Shannon v. Wal–Mart Stores, Inc.*, 974 S.W.2d 588, 592 (Mo.App.1998).

■ Gorman argues that even if we were to treat Wal–Mart's objection as pre-

In a verdict directing instruction directing an assessment of fault in a comparative fault case, the initial phrase of plaintiff's verdict director should be modified as follows:

> In your verdict you must assess a percentage of fault to defendant [whether or not plaintiff was partly at fault] if you believe:
>
> \* \* \*
>
> The remaining paragraphs of the verdict directing instruction would be derived from a verdict directing instruction where comparative fault is not submitted....
>
> \* \* \*

**2. 22.03 [1995 Revision] Verdict Directing—Invitee Injured**

> Your verdict must be for plaintiff if you believe:
>
> \* \* \*
>
> \* [unless you believe plaintiff is not entitled to recover by reason of Instruction Number (*here insert number of affirmative defense instruction* ) ].

**3.** THE COURT: All right. The verdict director is 9.

> MR. KROENERT: No. 9. "In your verdict you must assess a percentage of fault to Defendant." All right. I would object unless you put a coma after defendant and put "whether or not plaintiff was partly at

fault," coma, in there. I feel that should be in there and object to this on that ground and also object to the third paragraph where it says, "Defendant failed to use ordinary care to remove it."

\* \* \*

MR. MESSICK: Your Honor, what about Mr. Kroenert's objection regarding inserting the words "unless you believe" too? Now, isn't that the plaintiff's option? Is it required?

MR. KROENERT: What I'm talking about is whether or not Plaintiff was partly at fault.

MR. MESSICK: Where are you getting that? What is the basis for that language? I'm sorry. I'm not tracking with you.

MR. KROENERT: 22.03.

MR. MESSICK: Maybe 37.01 is where that comes out of.

THE COURT: It is.

MR. MESSICK: Okay. 37.01 is that phrase, Judge, first paragraph. That is Plaintiff's option is what I thought. I don't opt to do that.

MR. KROENERT: We object to it.

THE COURT: In paragraph first of Instruction 9 Defendants have objected to Plaintiff's failure to include the wording "whether or not plaintiff was partly at fault." I have overruled the objection. The notes allow Plaintiff to put it in or not put it in at his option.

served, Wal–Mart would not be entitled to relief because Wal–Mart was not entitled to the affirmative defense instruction. Any analysis of a claim of instructional error in deviating from the prescribed MAI instruction begins with the proposition that where MAI prescribes a specific instruction, that instruction is mandatory, *Hein v. Oriental Gardens, Inc.*, 988 S.W.2d 632, 634 (Mo.App.1999), and the failure to give it is presumptively prejudicial, *Means v. Sears, Roebuck & Co.*, 550 S.W.2d 780, 786 (Mo. banc 1977). The party offering the erroneous instruction has the burden of showing that the erroneous instruction "created no substantial potential for prejudicial effect." *Porta–Fab Corp. v. Young Sales Corp.*, 943 S.W.2d 686, 689–90 (Mo.App.1997). The determination of prejudicial effect is the province of the court. *Powers v. Ellfeldt*, 768 S.W.2d 142, 146 (Mo.App.1989). "No judgment is to be reversed on account of instruction error unless the error materially affected the merits of the case." *Id.* In other words, the error must be prejudicial for a judgment to be reversed. *Hein*, 988 S.W.2d at 634. The party claiming instructional error has the task of showing "that the instruction as submitted misdirected, misled, or confused the jury." *Id.*

■■■ Wal–Mart argues that it was not required to remove any naturally accumulating snow or ice which constituted a condition general to the community, citing authorities such as *Maxwell v. City of Hayti*, 985 S.W.2d 920, 921–22 (Mo.App. 1999); *Alexander v. American Lodging Inc.*, 786 S.W.2d 599, 601 (Mo.App.1990); *Milford v. May Dept. Stores Co.*, 761 S.W.2d 231, 232 (Mo.App.1988). Wal–Mart, however, overlooks the fact that the evidence was not consistent with a claim

that the sidewalk presented a condition of snow and ice general to the area. *Alexander*, 786 S.W.2d at 602. The evidence showed that Wal–Mart actually cleared the ice from the parking lot and the sidewalk the morning the plaintiff fell. Although it is generally held to be error to give a verdict directing instruction for the plaintiff which does not include the "tail" where an affirmative defense instruction is given, " such holdings apply only if the defendant is entitled to the affirmative defense submitted in his instruction." *Missouri State Highway Commission v. Hensel Phelps Constr. Co.*, 634 S.W.2d 168, 175 (Mo. banc 1982).

Point denied.

### Instructional Error—Greater Burden

In its second point, Wal–Mart contends that the trial court erred in giving Instruction No. 9 as offered by Gorman and in refusing to give the alternative Instruction No. 9 it offered.[4] It argues that the instruction given imposes a greater obligation and burden on the defendant than Missouri law requires. Wal–Mart argues that the instruction improperly communicated that the defendant had the duty to remove all the ice as opposed to treating and salting the sidewalk. Wal–Mart points out that MAI 22.03 should have been modified to fit the facts of this case because it does not deal with ice on a sidewalk but with a substance on a floor. Wal–Mart characterizes the testimony of its store manager related to the removal of ice as irrelevant because the manager had no personal knowledge of the condition at the time Mr. Gorman fell.

■■ In response, Gorman argues that the language of Instruction No. 9 is taken

---

4. Wal–Mart's alternative instruction stated:

In your verdict you must assess a percentage of fault to defendant, whether or not plaintiff was partly at fault, if you believe:

First, there was ice on the sidewalk of defendant's store and as a result the sidewalk was not reasonably safe, and

Second, defendant knew, or by using ordinary care could have known, of this condition, and

Third, defendant failed to use ordinary care to make the sidewalk reasonably safe, and

Fourth, as a direct result of such failure, plaintiff sustained damage.

directly from MAI 22.03 and all of the evidence supports the language of the instruction. The store manager testified that in order for the sidewalk to be safe, the ice had to be removed. The store manager's testimony established that prior to Gorman's injury, Wal–Mart employees would have been instructed to remove the ice. Gorman also testified that the sidewalk appeared to him to be free of ice. Gorman said it was only after he reached the spot where he fell that he realized there was a glaze. Where a party assumes a duty to alter a common area covered by snow and ice, the party must exercise ordinary care to remove the snow and ice.

 The use of Missouri Approved Instructions is mandatory in any case where the instructions apply. Rule 70.02; *Shutt v. Chris Kaye Plastics Corp.*, 962 S.W.2d 887, 890 (Mo. banc 1998). An instruction may be modified, however, in order "to fairly submit the issues in a particular case." Rule 70.02(b). However, "[w]here an MAI is applicable, and … does not violate the substantive law, and there is evidence to support it, the trial court should not modify it to comport with what the court believes to be a better instruction." *Brenneke v. Department of Missouri, Veterans of Foreign Wars of U.S. of America*, 984 S.W.2d 134, 143 (Mo. App.1998).

 The language used in Instruction No. 9 comes directly from MAI 22.03. We believe Gorman is correct that the evidence in the case supports the instruction and it does not violate the substantive law. While it is true as a matter of common sense that Wal–Mart's actual duty, once it began to work on the sidewalk, was to make the sidewalk reasonably safe, even if it did not remove all the ice, Wal–Mart indicated that here it undertook the actual removal of the ice and snow, and there was no evidence of any alternative approach to making the sidewalk safe. Once a landowner undertakes to remedy a condition, that landowner has a duty to do so in a

non-negligent fashion. *See Hellmann v. Droege's Super Market, Inc.*, 943 S.W.2d 655, 660 (Mo.App.1997); *Alexander*, 786 S.W.2d at 601.

There is evidence from which the jury could have found that Wal–Mart undertook to remove snow and ice on its sidewalks, and that in doing so it was negligent. Murphy, the store manager, testified that there was "no question" that the sidewalk had been cleared by Hyper–Mart employees prior to 11:00 a.m. Kutscher, the assistant manager, testified that if the parking lot had been salted between 11:00 a.m. and 11:30 a.m., the sidewalks would have been done about the same time. Murphy testified that in order for the sidewalk to be considered safe, the ice had to be removed. The jury could infer from this testimony the likelihood that store employees would have been instructed to remove the ice, not merely to find some way to make the sidewalk safe. Kutcher testified that at 2:30 p.m., he observed evidence of ice and snow piled in a row against the wall. Gorman testified that at 11:00 a.m., as he approached the sidewalk, it appeared to him that it was clear of ice. When Gorman reached the spot where he fell, he realized that there was a glaze of ice on the sidewalk. From this testimony a jury could infer that an attempt was made before 11:00 a.m. to remove the ice, but the ice was not removed well enough to make the sidewalk safe. Thus, there was evidence to support the submission of Instruction No. 9 to the jury and the language contained therein. There was no evidence that Wal–Mart took any alternative approach to treating the sidewalk for safety. Therefore, the trial court did not err in submitting Instruction No. 9 to the jury. Point II is denied.

### Directed Verdict

In Point III, Wal–Mart complains that the trial court erred in failing to sustain Wal–Mart's motion for directed verdict. It claims that the evidence shows conclusively that the defendant did not breach

any duty owed to the plaintiffs and that Gorman fell because of a general weather condition. It reiterates that a defendant has no duty to remove ice or snow that accumulated naturally on the sidewalk as a result of a general weather condition. Gorman counters, contending that the trial court did not err in failing to direct a verdict in favor of Wal–Mart. Gorman relies upon testimony tending to show that the condition of the sidewalk was not a result of a natural weather condition but an alteration of that condition.

■ On appeal of the denial of a motion for a directed verdict, we review evidence and reasonable inferences therefrom in the light most favorable to jury's verdict and disregard evidence to the contrary. *Seitz v. Lemay Bank & Trust Co.,* 959 S.W.2d 458, 461 (Mo. banc 1998). A "case may not be withdrawn from the jury unless there is no room for reasonable minds to differ[.]" *Gregory v. Robinson,* 338 S.W.2d 88, 91 (Mo. banc 1960). Review of this matter is a question of law. *Strycharz v. Barlow,* 904 S.W.2d 419, 426 (Mo.App.1995).

■ Generally speaking, "[t]here can be no doubt that a defendant may voluntarily assume a duty to protect the safety of an invitee.... Once such a duty is assumed, the defendant must exercise reasonable care." *Thiele v. Rieter,* 838 S.W.2d 441, 444 (Mo.App.1992) (citing *Keenan v. Miriam Foundation,* 784 S.W.2d 298, 303 (Mo.App.1990)). Therefore, even if a possessor of land has no duty to an invitee to remove snow and ice that has accumulated naturally and is a condition general to the community, there is a recognized exception to the rule where the possessor assumes a duty to remove snow or ice from common areas. *Alexander,* 786 S.W.2d at 601. The exception to the rule arises whereby the duty is assumed "by agreement or a course of conduct[.]" *Id.* This duty does not arise from the possessor's policy alone, however. *Willis v. Springfield Gen. Osteopathic Hosp.,* 804 S.W.2d 416, 422 (Mo.App.1991).

Wal–Mart cites *Milford,* 761 S.W.2d at 232–33, in support of its position, pointing out that in that case, the court held that the owner of a store could not be held liable for injuries suffered by a customer when he fell in a slippery parking lot where rain and sleet were falling. However, in *Milford,* the rain and sleet were falling at the time of the customer's accident. *Id.* Had Wal–Mart established that, at the time Gorman arrived at the store and entered on the sidewalk, sleet and freezing rain were falling, causing a glaze of ice on everything, Wal–Mart might have been entitled to a directed verdict. There was, however, no such showing in this case.

The present case is more like *Alexander,* a case in which the defendant had cleared snow and ice from its parking lot and had spread salt and gravel on the parking lot before the plaintiff's fall. *Alexander,* 786 S.W.2d at 600. By its actions, the defendant in *Alexander* was held to have taken on a duty which had to be exercised using ordinary care. *Id.* at 601. The natural condition of the parking lot in *Alexander* was altered by the work that was done on the parking lot after the snow and ice had fallen but before the plaintiff fell.

■ The evidence that the condition of the sidewalk where Gorman fell had been altered prior to the time he fell provides a basis for a finding that Wal–Mart assumed a duty to Gorman and that that duty was performed in a negligent manner. Under the circumstances, the trial court did not err by failing to direct a verdict in Wal–Mart's favor. Point III is denied.

### Affirmative Defense Instruction

In Point IV, Wal–Mart next contends that in overruling the defendant's post-trial motions, the trial court erred in ruling that the defendant's affirmative defense instruction should not have been given and therefore defendant was not prejudiced by the failure to include any "tail" at the

conclusion of the plaintiff's verdict director. It argues that Instruction No. 12 was supported by substantial and competent evidence in that the testimony of the general weather condition of ice in the area was uncontroverted; that its policy of removing snow and ice does not, standing alone, establish a duty; and that Gorman did not rely upon the defendant's policy.

This point, which is a reiteration of earlier arguments, is premised on Wal–Mart's assumption that the evidence given by Murphy and Kutscher should not be considered in determining whether the condition of the sidewalk had been altered at the time Gorman fell. This is not a reasonable assumption:

> In civil actions, relevant evidence of custom and practice is admissible to show the occurrence of subsequent acts. *See, e.g., Miles Homes v. First State Bank,* 782 S.W.2d 798, 802 (Mo.App. 1990) (holding that "[e]vidence of a business routine or custom may establish an act was performed"); *First Nat'l Bank v. Mid–Century Ins. Co.,* 559 S.W.2d 50, 52 (Mo.App.1977) (holding that evidence of an insurance company's custom and business practice was admissible to show the letter in question was properly mailed).

*Division of Youth Servs. v. Hopson,* 933 S.W.2d 917, 919 (Mo.App.1996).

The evidence in this case—both plaintiff's and defendant's—supports the proposition that the condition of the sidewalk was altered. For the reasons discussed above, this point is denied.

### Admission of Tax Returns

In its final point, Wal–Mart argues that the trial court erred in admitting Gorman's federal tax returns from the years 1995 through 1997 and in allowing Gorman to base his alleged lost income thereon. It argues that the returns did not afford a basis for reasonable estimate of loss and afforded nothing more than an opportunity for speculation. Wal–Mart points out that expected profits are contingent upon many changing circumstances and may be recovered only when made reasonably certain by proof of actual facts.

Gorman contends that the returns are not *ipso facto* incompetent or inadmissible evidence. Gorman argues that the schedules of business profit and loss (schedule C's), together with Gorman's testimony, established a net loss. Under Gorman's argument, it is sufficient that the claim for lost profits be supported with reasonable certainty under the circumstances.

At trial, Gorman testified:

Q (By Mr. Messick) All right. Mr. Gorman, I now show you what I have had marked as Plaintiff's Exhibit No. 27, 28, 29. Can you identify those for us, please.

A I can.

Q What are they?

A They are copies of my tax returns for '95, '96, '97.

Q All right. Do those tax returns have a Schedule C on them?

A They do.

Q And do each of those returns for these three years reflect your net income from your business for each of those years?

A Yes, it does.

Q All right. What was your net income in 1995?

\* \* \*

A 23,326.

Q All right. How about '96?

A In '96 it was 33,795.

Q And how about in '97?

A In '97 it was 25,437.

Q All right. Can you tell us, Mr. Gorman, based on those returns your estimate as to your net loss in the year 1997 as a result of this injury?

\* \* \*

Q (By Mr. Messick) I inadvertently got the Schedule C for ΄96 on the front. Would you read the Schedule C for ΄96?

A For ΄96 it would be 27,874.

Q All right. That 33,000 figure included Michelle's income, didn't it?

A Yes.

Q All right. Based on those numbers can you give us—and knowing how much you work each month and so forth can you give us what you believe your lost income was for 1997 as a result of this injury, just your best estimate?

At this point Wal–Mart objected on the grounds that proving lost profits from the operation of a business requires a showing of the loss of specific business opportunities, and that the use of the tax returns in this manner is inadequate because it calls for speculation and conjecture.

\* \* \*

THE COURT: I think there is an adequate foundation for him to give an opinion. You can cross-examine him. There is certainly a foundation for him to say what he claims he lost.

MR. MESSICK: All right.

(THE PROCEEDINGS RETURNED TO OPEN COURT.)

Q (By Mr. Messick) Mr. Gorman, again based on those numbers and your knowledge of your business what is your estimate as to the amount of income you lost in the year 1997 as a result of this injury?

A How I calculated my loss of income for—

Q First of all, do you have an estimate?

A I have an estimate of around $4,000.

Q All right. Is that before any expenses are taken out?

A That would be not having my expenses taken out.

Q Right. Take the expenses out and tell us.

A Around $2,000.

Q A net loss of around $2,000?

A A net loss of around 2,000.

Q All right. In fact, you made about 2,000 less in ΄97 than in ΄96. True?

A Right.

Wal–Mart contends that the trial court erred in allowing this evidence. "The standard of review for the admissibility of evidence is whether an abuse of discretion results in substantial and obvious injustice." *Olinger v. General Heating & Cooling Co.,* 896 S.W.2d 43, 49 (Mo.App.1994).

■ A stricter level of proof is required for lost profits as opposed to lost wages. *Franklin v. Byers,* 706 S.W.2d 230, 231–32 (Mo.App.1986). "The rationale for the different treatment lies in the fact that profits are more speculative and arise from elements other than the personal services of the owner." *Id.; see also Brenneke,* 984 S.W.2d at 142. Gorman's testimony established that he was claiming lost profits, not lost income from employment.

In *Swiss–American Importing Co. v. Variety Food Prod. Co.,* 471 S.W.2d 688, 690 (Mo.App.1971), the court explained:

The test for the recovery of anticipated or expected profits has been frequently stated in Missouri. As good a statement as any is that contained in *Morrow v. Missouri Pac. Ry. Co.,* 140 Mo.App. 200, 123 S.W. 1034, l.c. 1039: ΄ \* \* \* Expected profits are in their nature contingent upon many changing circumstances, uncertain and remote at best. They may be recovered only when they are made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount; and, when this is made to appear, they may be recoverable.΄

In short, the requirement for proof of loss of profits is not absolute certainty, but only a sufficient factual base that the estimate of the loss is not based upon speculation and conjecture. *Tnemec Company v. North Kansas City Development Co.,* Mo., 290 S.W.2d 169(4—6);

*Hargis v. Sample,* Mo., 306 S.W.2d 564(4—7); *Anderson v. Abernathy,* Mo., 339 S.W.2d 817(5—7); *Red–E–Gas Company v. Meadows,* Mo.App., 360 S.W.2d 236 (2, 3, 4, 5); *Coonis v. Rogers,* Mo., 429 S.W.2d 709 (5, 6, 7). A mere estimate or opinion of loss of profits, unsupported by factual evidence is insufficient to support an award of lost profits. *Kopff v. Deves,* Mo.App., 324 S.W.2d 768 (2, 3); *Red–E–Gas Company v. Meadows, supra,* 360 S.W.2d 236 (2, 3).

 Gorman's testimony that his estimated expenses would be "[a]round $2,000" and his lost profits would be "around $2,000" was not sufficiently specific to meet the requirements for proof of lost profits. Assuming the jury included an award of $2,000.00 for lost income in its verdict, Gorman's award should be reduced by $2,000.00.

Because we deny Wal–Mart's other points, and because Wal–Mart's argument here is confined to the amount awarded for lost profits, this court may address the error of the trial court ruling in this respect by ordering pursuant to Rule 84.14 that the amount of the Gorman's award be reduced by $2,000.00. *See Dildine v. Frichtel,* 890 S.W.2d 683, 687 (Mo.App.1994); *Schoor v. Wilson,* 731 S.W.2d 308, 312–13 (Mo.App.1987).

### Conclusion

We find no basis to reverse for instructional error. There is substantial evidence supporting the submission against Wal–Mart. Because Gorman did not present sufficient evidence proving lost profits, Gorman should not have been permitted to submit his claim of lost profits. Accordingly, pursuant to Rule 84.14, we order reduction of the judgment against Wal–Mart from $41,250.00 to $39,250.00. We otherwise affirm the judgment of the trial court, but we remand to the trial court with directions that the trial court enter its order amending the amount of the judgment from $41,250.00 to $39,250.00.