**GREENWICH CONDOMINIUM ASSOCIATION, Plaintiff/Respondent,**

v.

**CLAYTON INVESTMENT CORP., Defendant/Appellant,**

**and**

**Taylor–Morley, Inc., and City of St. Louis, Missouri, Defendants/Respondents,**

**and**

**Milton E. McConnell, et al., Third Party Defendants/Respondents.**

No. 67224.

Missouri Court of Appeals, Eastern District, Division Two.

April 2, 1996.

Marvin Max Klamen, St. Louis, for appellant.

Scott Lee Meyer, Thomas W. Wehrle, Robert Edward Jones, Clayton, for respondent.

CRAHAN, Presiding Judge.

Clayton Investment Corporation ("Purchaser") appeals following a judgment setting aside its deed issued pursuant to a sale of property for failure to pay delinquent taxes and ordering the Sheriff to reschedule sale of the property. On appeal, Purchaser challenges, *inter alia*, the authority of the court to set aside the deed pursuant to § 92.840.6 RSMo 1994.[1] We affirm.

The facts are not in dispute. On November 13, 1985, Taylor–Morley, Inc. ("Developer") established the Greenwich Condominium by recording the Declaration of Condominium and By–Laws of the Greenwich Condominium ("Declaration"), along with Plat I for real estate described as 226 (rear) North Boyle in the office of the Recorder of Deeds for the City of St. Louis ("City"). The plat is an integral part of the Declaration. Subsequently, as Developer completed each of the six buildings comprising the condominium complex, Developer executed Amendments 1 through 6 to the Declaration, and plats 1 through 6 to the Greenwich Condominium. All were properly recorded between April 1986 and January 1987. On January 22, 1987, Developer executed the Seventh Amendment to the Declaration and Plat 7 (which, *inter alia*, provided parking for unit owners) which were recorded on January 27, 1987.

The real estate tax bills for the subject property (the parking area, hereinafter the "property") for 1985 and 1986 were sent to and paid by Developer. The tax bills for 1987, 1988 and 1989 were sent to Developer but were not timely paid. The Office of the Assessor maintained a file on the Greenwich Condominium which contained the Declaration and the six amendments to it, as well as Plat One of the Greenwich Condominium and the six amendments to it.

Correspondence was exchanged between Developer and the City regarding the taxes for 1987, 1988 and 1989. Developer maintained that the parking area was a condominium common element and therefore the owners of the property were the unit owners rather than Developer. Developer pointed out that the Assessor's office need only assess the parcel on the same percentage it uses when assessing owners for other common elements. The Assessor's response was that the property was still vested in the name of the Developer and not the unit owners, and suggested that Developer execute a quit-claim deed. The Assessor further stated that the Assessor's office has a mechanical recording process and requires some sort of official document to change the tax bills. Developer responded that no deed was needed because the property was duly transferred by filings already made, and by operation of the Condominium Act.

The Collector of Revenue for the City filed suit to impose a lien and foreclose for delinquent taxes. A judgment lien was established on the property for the delinquent taxes and the property was sold at a Sheriff's sale on September 24, 1991. Clayton Investment purchased the property at the tax sale for $8,500, and has paid the yearly taxes ever since. After a hearing on November 8, 1991, the court approved and confirmed the tax sale.

Neither the City of St. Louis, the Collector of Revenue, the Assessor, nor the Developer gave notice to either the unit owners or the governing condominium association ("Association") of the tax delinquency, the foreclosure proceedings, the tax sale or the hearing to confirm the tax sale. The unit owners first became aware of the delinquency and tax sale when Purchaser demanded possession. Association filed suit on February 10, 1992, seeking a declaration that the property was subject to the Declaration of Condominium, that Association has the sole right to manage the property, and that Purchaser be

1. All further statutory references will be to RSMo 1994.

barred from operating any business or obstructing any portion of the property. The suit also sought to quiet title, an injunction against Purchaser, a declaration that the tax sale was void, and damages against Developer. On November 17, 1993, Association also filed a motion to set aside the Sheriff's sale pursuant to § 92.840.6, based upon the failure of Purchaser to obtain the occupancy permit required by that provision.

Defendant Developer filed a cross-claim seeking a declaration that the deed issued to Purchaser is null and void, that the Assessor of the City of St. Louis assess the property in the names of the individual unit owners, that the underlying judgment be set aside, and that the Collector of Revenue issue tax bills to the individual unit owners. Purchaser filed a counterclaim in ejectment seeking delivery of possession of the property and damages. All damage claims against Developer were severed prior to trial.

After a bench trial, the trial court entered Amended Findings Of Fact And Conclusions Of Law And Judgment. The court concluded that the City Assessor's Office may not require Developer to enter into a quit-claim deed or other document of conveyance approved by the Assessor in order to transfer Developer's interest in the property for purposes of taxation. The court further concluded that under §§ 448.3–112.4 and .5, any conveyance, encumbrance, judicial sale, or other transfer of condominium common elements is void except in certain circumstances inapplicable to the instant case. The court held that the Sheriff's sale and confirmation must be set aside due to Purchaser's failure to timely apply for an occupancy permit pursuant to § 92.840.6. The court also found that at a minimum, the Seventh Amendment to the Declaration created a right or interest in the property in the unit owners such as might entitled them to redeem the property pursuant to § 92.750. The court further found that proceedings for the collection of delinquent taxes are actions *in rem* requiring notice. The court then set aside the sale of the property, declared the deed issued to Purchaser null and void, and ordered the City to return to Purchaser all monies ever paid by it to the City relating to the property along with interest and attorney's fees paid to the City. Finally, the court ordered the Sheriff to re-schedule the sale of the property for the purpose of satisfying any real estate tax delinquency. The court did not reach the merits of any other issues, declaring such issues to be moot in view of the relief granted. Only Purchaser appeals from this judgment, which the trial court certified as final in accordance with Rule 74.01(b).

■ Appellate review of civil court-tried cases is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo.1976) and Rule 73.01(c). The decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32. For purposes of clarity, Purchaser's third Point Relied On, which contains three subpoints, will be discussed first.

■ In its third Point Relied On, Purchaser first contends the trial court had no authority to set aside the tax sale pursuant to § 92.840.6. The following is uncontroverted. The property contained a structure (carports). The tax sale occurred on September 24, 1991. Confirmation of the sale occurred on November 8, 1991. Thirteen days later, on November 21, 1991, a Sheriff's Deed was issued to Purchaser with restrictions relating to obtaining an occupancy permit as provided in § 92.840.7. At that time Purchaser had not applied for an occupancy permit, nor did Purchaser ever apply for an occupancy permit until after the instant suit was filed.

Section 92.840.6 provides in pertinent part:

If there is a building or a structure on the parcel, the purchaser shall apply for an occupancy permit from the city or appropriate governmental agency within ten days after the confirmation hearing. . . .

Failure to apply for such occupancy permit within ten days after confirmation shall result in the sale and confirmation being immediately set aside by the motion of any interested party and that parcel shall again be advertised and offered for sale by the sheriff to the highest bidder at public auc-

tion for cash at any subsequent sheriff foreclosure sale.

Section 92.840.2 provides that after the court determines that adequate consideration has been paid at the tax sale, the court:

> shall confirm the sale and order the sheriff to issue a deed with restriction as provided herein to the purchaser subject to the application of [sic] an occupancy permit for all parcels as provided in subsection 5 [which defines "occupancy permit"] of this section.

■ In construing laws, the primary rule is to ascertain the legislative intent from the words used, considering the words used in their plain and ordinary meaning. *Killion v. Bank Midwest, N.A.,* 886 S.W.2d 29, 32 (Mo.App.W.D.1994). Under the plain language of §§ 92.840.2 and .6, if the parcel contains a structure, no sheriff's deed is to be issued *until* an occupancy permit has been applied for. Thus, a sheriff's deed issued for a parcel with a structure where no such application was applied for is voidable. Here, Purchaser did not apply for the occupancy permit until the pendency of this suit, long after the ten day period called for under the statute. The deed issued to Purchaser is therefore voidable and the trial court did have the authority to set it aside.

Purchaser contends, however, that once a deed has been issued the applicable statute relative to the occupancy permit is § 92.840.7,[2] which calls for a fine of $5,000 if the occupancy permit is not obtained, not § 92.840.6, which sets aside the sale and confirmation for failure to apply for one. Purchaser argues it does not make sense for

the penalty for failure to apply for the occupancy permit to be so much greater than the penalty for failure to actually obtain one. However, as noted above, the legislative intent was that no sheriff's deed was to be issued prior to the application for an occupancy permit. Therefore, a separate money penalty for failing to follow through on the application and obtain a permit once the deed has been properly issued is neither unreasonable or illogical.

Purchaser also argues the court erred because while § 92.840.6 mentions the setting aside of "sale" and the setting aside of "confirmation," the statute is silent with regard to setting aside a recorded deed. Purchaser suggests that under § 92.840.6, the mention of one or several things (here, "sale" and "confirmation") implies the exclusion of another (here, "deed" or "conveyance") not mentioned. However, the rule of construction referred to has no application here. It was not necessary for the legislature to include setting aside the sheriff's deed in § 92.840.6 because it was not relevant in that under § 92.840.7 a sheriff's deed was not to be issued until *after* an occupancy permit had been applied for.

■ Further, § 92.840.6 specifically provides that the tax purchaser *shall* apply for an occupancy permit from the city. Failure to apply for the occupancy permit within ten days after confirmation *shall result* in the sale and confirmation being set aside. The general rule of statutory construction is that the use of the word "shall" is mandatory and not permissive. *Welch v. Eastwind Care*

---

2. Section 92.840.7 provides:

The sheriff shall include a deed restriction in the sheriff's deed, issued after confirmation and after the application of [sic] an occupancy permit for any parcel containing a building or structure. The deed restriction shall state that the purchaser at the sheriff's sale who had the property confirmed and who applied for an occupancy permit shall obtain an occupancy permit for the building or structure from the appropriate governmental agency prior to any subsequent transfer or sale of this property. This deed restriction shall exist as a lien against such real estate while the purchasers hold same in the amount of five thousand dollars. The purchaser of the property at the sheriff sale who had the property confirmed

and applied for the occupancy permit shall agree that in the event of their failure to obtain an occupancy permit prior to any subsequent transfer of the property, they shall pay to the sheriff the sum of five thousand dollars as fixed, liquidated and ascertained damages without proof of loss or damages. The sheriff shall have the discretionary power to file a lawsuit against such purchaser for collection of these liquidated damages. These liquidated damages shall be distributed on a prorated basis to the appropriate taxing authority after the sheriff deducts all costs, expenses and attorney fees for such lawsuits. The sheriff may employ attorneys as he deems necessary to collect liquidated damages.

*Ctr.,* 890 S.W.2d 395, 397 (Mo.App.W.D.1995). When a statute provides what results shall follow a failure to comply with its terms, it is mandatory and must be obeyed; however, if it merely requires certain things to be done without prescribing the results that follow, such a statute is merely directory. *State v. Conz,* 756 S.W.2d 543, 546 (Mo.App.1988). Section 92.840.6 specifies the result which follows a failure to comply with its terms: the tax sale is to be set aside and the property advertised and offered for sale at public auction. Therefore, it is mandatory that a tax purchaser apply for an occupancy permit if the property contains a structure, as this property did. The penalty for failure to so apply is also mandatory—*i.e.,* the tax sale must be set aside.

Purchaser's final argument under this subpoint is that allowing a tax sale to be set aside long after the purchase on the basis of failure to apply for an occupancy permit would create "a myriad of wide-ranging problems." We disagree. Though the time period for filing the application for occupancy permit is narrow—ten days—the applications must be in writing and are maintained by the City; therefore, it would be a simple process for subsequent purchasers, title companies or other interested parties to confirm that the application had been filed. Thus, these problems do not appear to be more significant than others related to title. In any event, such concerns are for the legislature, not this court. Where the language of the statute is clear, it is not our function to substitute our judgment for the legislature's.

■ Purchaser's second subpoint argues it was improper for the court to set aside the tax sale because § 140.600 has not been satisfied. Section 140.600 provides, *inter alia,* that no action to set aside a tax sale may be maintained unless the plaintiff in his petition offers to refund to the defendant all taxes paid by such defendant. There was, however, a stipulation before the court which would support a finding of tender, albeit disputed as to its legal effect by Purchaser. In any event, we find that the intent of the statute was satisfied and that Purchaser is not entitled to relief on this basis. Specifically, we note that in its judgment the trial court

ordered the City to return to Purchaser "all monies ever paid by it to the City as and for real estate taxes on the property, together with all penalties, attorneys' fees or other money paid to the City, and with the legal rate of interest thereon." The City has not appealed from this judgment, which is sufficient to satisfy any interest of Purchaser designed to be protected by § 140.600. *See Yeamans v. Lepp,* 167 Mo. 61, 66 S.W. 957 (1902).

In *Yeamans,* plaintiffs were landowners, delinquent in paying taxes, whose property was sold at a tax sale without landowner knowledge. The landowners offered to reimburse the tax sale purchaser his money and costs if purchaser would reconvey the property to plaintiffs. Purchaser refused. Plaintiffs sued to set aside the tax sale. The Missouri Supreme Court held:

> This is not a direct averment of a tender in its legal sense, that is, an offer of the money; but it does allege and offer to pay the amount the defendant bid and paid for the land, and all his costs and expenses and that the defendant refused the offer, and it renews the offer, and that is all that is necessary in equity. *And even if no offer was so made, a court of equity has the power to impose the terms upon which it will lend its aid,* and would require the amount paid to be refunded as a condition precedent to granting the relief. *Id.* at 961 (emphasis added).

In this case, the trial court set aside the tax sale and ordered the City to return to Purchaser all monies ever paid by it to the City related to the property, with interest. This ruling is in keeping with *Yeamans.* Point denied.

■ Purchaser's final subpoint contends that "the granting of relief in favor of Developer is improper in view of the trial court's specific finding that Developer was estopped by its actions herein and hereinbefore from claiming any right, interest or ownership in the property." It appears Purchaser is arguing that it is inconsistent to grant relief which favors Developer because the court found Developer to be a "bad actor" in its handling of tax bills in question. However,

the trial court did not grant relief "in favor of Developer." Rather, the court granted the Association's motion to set aside the tax sale due to Purchaser's failure to apply for an occupancy permit. Nor is this ruling by the trial court in any way inconsistent. The trial court stated that when the Seventh Amendment to the Declaration was filed at a minimum it created an interest in the property in the unit owners which might entitle them to redeem the property under the redemption statute. To say Developer has no interest in the property is consistent with this relief.

Purchaser contends the court's action improperly creates a new right in the land, a "judicial redemption," in favor of Developer after the statutory redemption period had expired. However, it is unclear how setting aside the tax sale is a "judicial redemption" in favor of Developer. By setting aside the tax sale and ordering a rescheduling of it, the court merely reverses the effects of an improper tax sale and allows the unit owners, who had an interest in the property, an opportunity to redeem it under the redemption statute.

■ Turning to Purchaser's other points of error we note that Purchaser's first point does not comply with Rule 84.04(d). *Thummel v. King*, 570 S.W.2d 679, 685 (Mo. banc 1978), provides the definitive exposition on Rule 84.04(d):

> After stating the ruling the trial court actually made, it stands to reason that the point should then specify *why* the ruling was erroneous. This requirement essentially contemplates a statement which ordinarily will closely approximate what appellant believes should have been the trial court's conclusion of law on the point being made. After stating why the ruling was erroneous, the court then must be informed *wherein* the testimony or evidence gives rise to the ruling for which appellant contends.

*Thummel v. King*, 570 S.W.2d at 685 (emphasis in original). Purchaser's first point states:

THE TRIAL COURT IMPROPERLY RULED THAT THE CONDOMINIUM LAW, SPECIFICALLY MO.REV.STAT. § 448.2–100 THROUGH § 448.2–109 AND § 448.2–117, HAVE EFFECTED A CHANGE IN MISSOURI'S CONVEYANCING LAW

In this point the challenged ruling is stated, but the rule of law it is asserted the court should have applied is not set forth, nor has Purchaser specified the evidentiary basis upon which it is contended the asserted rule is applicable. Therefore, this point relied on preserves nothing for review.

■ Reviewing *ex gratia*, it appears Purchaser is attacking the court's conclusion that Developer need not quit-claim the property to the unit owners as suggested by the City Assessor's office. We note that neither the Association, nor the unit owners, the Developer nor the City has appealed this ruling.[3] We do not see how Purchaser is aggrieved by, or has standing to raise, this issue. Purchaser's only interest in the property is derived from the sale. Inasmuch as we have held that the deed to Purchaser was properly set aside, no interest of Purchaser's can conceivably be prejudiced by the trial court's ruling with respect to the need for a quit claim deed. We therefore deny this point.

■ Purchaser's second Point Relied On states:

DEVELOPER, HAVING RETAINED DEVELOPER'S RIGHTS AND HAVING FURTHERMORE REFUSED TO DIVEST ITSELF OF THE TITLE TO THE PROPERTY, WAS THE PARTY SOLELY RESPONSIBLE FOR THE PAYMENT OF THE DELINQUENT TAXES

This point is wholly insufficient and preserves nothing for appeal because it does not state which ruling of the trial court is being challenged or the evidentiary basis supporting a contrary result. Rule 84.04(d). Therefore, in accordance with *Thummel v. King*, *supra*, this point is denied.

---

**3.** Because neither the Association, the unit owners, Developer, nor the City have appealed, we need not and do not rule on the merits of this ruling. Nor should anything in this opinion be interpreted as criticism or approval of any other rulings of the trial court which are described but not specifically addressed herein.

Purchaser's final Point Relied On is also deficient:

THE HEREIN TRIAL COURT SHOULD HAVE ENTERED JUDGMENT IN FAVOR OF CLAYTON ON ITS CLAIM IN EJECTMENT IN THAT THE SOLE DEFENSE TO SUCH CLAIM FAILED AND A *PRIMA FACIE* CASE WAS PRESENTED ON ESSENTIALLY UNCONTROVERTED EVIDENCE; CLAYTON WAS ENTITLED TO A DETERMINATION IN ITS FAVOR, FOR POSSESSION, DAMAGES AND WITH TITLE QUIETED IN IT

This point fails to state the ruling being challenged and the evidentiary basis for a contrary ruling, and thus preserves nothing for review.

Again reviewing *ex gratia,* we note the trial court did not rule on certain of the claims, cross-claims and counter-claims presented by the parties because it ruled instead on the motion to set aside the tax sale due to Purchaser's failure to apply for an occupancy permit, which it deemed to render those issues moot. Purchaser cites *Harrington v. Muzzy,* 258 S.W.2d 637 (Mo.1953), for the proposition that a claim to quiet title requires the court to find such title. Purchaser argues that once it filed an action in ejectment (to quiet title) the trial court was bound to determine that issue.

Purchaser misperceives the rule in actions to quiet title. The correct rule is that "a judgment or decree in a quiet title action must affirmatively adjudge the title of the several parties." *Harrington v. Muzzy* at 638. In *Harrington,* the issue of which party had lawful title was actually determined by the court. See also, *Hansen v. O'Malley,* 356 Mo. 908, 913, 204 S.W.2d 281, 283 (1947); *Armor v. Frey,* 226 Mo. 646, 664, 126 S.W. 483, 486 (1910). The cited rule simply refers to the degree of specificity required when the court renders judgment. *Harrington* does not mandate that the trial court must always reach the merits of an action to quiet title even though the case can be disposed of on other grounds. Moreover, by setting aside the deed which served as the sole basis for Purchaser's claim of title, the court did, as a practical matter, adjudicate Purchaser's claim of title. We perceive no basis upon which Purchaser has any standing to complain of the sufficiency of the court's adjudication of the remaining parties' interests in the property. Point denied.

For the foregoing reasons, we affirm the judgment of the trial court.

CRANDALL and DOWD, JJ., concur.