

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| NORTHERN FARMS, INC., | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | WD77053 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | October 13, 2015 |
| W.K. JENKINS and M. EARLENE | ) | |
| JENKINS d/b/a GREEN ACRES FARMS, | ) | |
| | ) | |
| Appellants. | ) | |

**Appeal from the Circuit Court of Platte County, Missouri**
**The Honorable Abe Shafer, Judge**

**Before Division Three:** Karen King Mitchell, Presiding Judge, and
Lisa White Hardwick and Anthony Rex Gabbert, Judges

W.K. and M. Earlene Jenkins (referred to respectively as "Father" and "Mother" and collectively as "the Jenkinses") appeal the trial court's judgment in favor of Northern Farms on its claims of fraud and unjust enrichment against Father and Mother stemming from the period of time when Father was the president of Northern Farms. Finding no reversible error, we affirm.

## Facts

Northern Farms is a corporation founded in 1982 by Father, Mother, and some of their sons. Father served as Northern Farms' president from 1984 until 2002, when, following a number of disputes, the family shareholders removed Father as an officer.[1]

---

[1] Father was apparently also removed as a shareholder. There is no dispute, in this litigation, over whether sufficient compensation was paid for whatever shares Father owned.

This litigation was initiated in December of 2005, when Gary and Judy Guilford, who owed substantial sums on three promissory notes, filed an interpleader action in which they sought to determine who owned the notes. The interpleader action erupted into years of litigation over decades of alleged wrongdoing, fraud, and mismanagement of the Jenkins family's farming business. It is but one case in a series of litigation involving the family members. *See Wilson v. Jenkins*, 237 P.3d 1272 (Kan. Ct. App. 2010); *Jenkins v. Jenkins*, 448 S.W.3d 834 (Mo. App. W.D. 2014). A full recitation of the unfortunate history is not required, but a brief overview follows.[2]

In the 1990s, the Guilfords purchased 460 acres of Kansas farmland from Northern Farms, signing promissory notes to Northern Farms. The promissory notes were later allegedly assigned to the Jenkinses. In response to the Guilfords' interpleader action, both Northern Farms and the Jenkinses claimed ownership of the Guilford notes. The Jenkinses also filed a cross-claim against Northern Farms, asserting ownership of a separate $500,000 note from Northern Farms that they claim was signed over to them. In turn, Northern Farms counterclaimed, alleging various breaches of fiduciary duty, fraud, and self-dealing by Father when he was president of the company, and further alleging Mother's enjoyment of the ill-gotten gains. Northern Farms' counterclaim sought both legal and equitable remedies.

Following years of litigation, all of the Jenkinses' claims were dismissed. At the time of trial, the ownership of the Guilford notes, as well as Northern Farms' various claims of fraud and breach of fiduciary duty against Father, and unjust enrichment against Mother, remained. The court held a bifurcated trial, in which the parties' legal claims were tried to a jury, and Northern Farms' equitable claims were to be addressed later by the court.

---

[2] "We view the facts in the light most favorable to the jury's verdict." *Host v. BNSF Ry. Co.*, 460 S.W.3d 87, 94 n.2 (Mo. App. W.D. 2015).

At trial, the court entered a directed verdict in favor of Northern Farms on the Guilford notes. Following trial, the jury returned verdicts for Northern Farms on all counts, in an amount totaling $1,356,253.53. Following the jury trial, Northern Farms dismissed all of its equitable claims, avoiding the need for a bench trial of the equitable issues, after which the trial court entered judgment in the amount of the verdicts, plus interest, for a total of $2,412,601.36.

The Jenkinses timely appealed.

**Analysis**

In their four points, the Jenkinses challenge various actions of the trial court, which they argue constitute reversible error: (1) entering judgment against Mother on a count alleging unjust enrichment, which they claim Northern Farms had voluntarily dismissed following trial; (2) allowing Northern Farms to amend its pleadings at trial to state a new cause of action for unjust enrichment; and (3) refusing to dismiss claims of Northern Farms' claims that were allegedly barred by the statute of limitations. For clarity, we will address the points out of order, and combine some into a single discussion.

I. **Northern Farms was not allowed to amend its pleadings at trial to state a new cause of action.**

The Jenkinses argue that the trial court erred in allowing "for the first time at trial," Northern Farms to amend its Count VIII—initially denominated a count for "accounting"—to a count for "unjust enrichment for money had and received."[3] The Jenkinses claim that "[n]ot

---

[3] The Jenkinses imply that Northern Farms should not have been allowed to "lump together" what they argue are the separate actions of unjust enrichment and money had and received. While the propriety of combining these claims is not before us, because not properly raised on appeal, we simply note that "[a]n action for unjust enrichment is very similar to one for money had and received." *Lowe v. Hill*, 430 S.W.3d 346, 349 n.2 (Mo. App. W.D. 2014). "Claims for money had and received and unjust enrichment are both founded upon equitable principles whereby the law implies a contract [referred to as quasi-contract] to prevent unjust enrichment." *Id.* at 349 (footnotes omitted). The elements of an action sounding in quasi-contract are: "'(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable.'" *Pitman v. City of Columbia*, 309 S.W.3d 395, 402 (Mo. App. W.D. 2010) (quoting *White v. Pruiett*, 39 S.W.3d 857, 863 (Mo. App. W.D. 2001)). At least one commenter has opined that an action for money had and received arises from unjust enrichment. 35 Mo. Prac. § 44:9 ("The appropriate action for restitution when one party

3

until Northern Farms' opening statement did the terms 'unjust enrichment' and 'money had and received' first come up," leaving the Jenkinses "surprised and puzzled," and without "opportunity to respond to such allegations." The Jenkinses argue that allowing this sort of amendment at the time of trial is prejudicial and barred by *Nichols v. Mama Stuffeati's*, 965 S.W.2d 171, 176 (Mo. App. W.D. 1997), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003), because it is a misapplication of "the rule allowing pleadings to be amended at trial to conform to the evidence." Because the Jenkinses misrepresent the record, and have not challenged the relevant ruling, their argument fails.

Approximately one month before trial, the trial court held a pre-trial conference, where the court took up various issues. The conference was off the record, but the court issued an order, purportedly memorializing the results of the pre-trial conference. Therein, the trial court ordered that "Northern Farms, Inc. will separate its legal and equitable claims by renaming certain of its counts," and that all legal claims "will be tried first to the jury" with the equitable claims being tried later to the court.

At a subsequent hearing one week later, counsel for Northern Farms argued that Count VIII, denominated as a claim for "accounting," included both legal and equitable claims. Northern Farms specifically stated its belief that "the legal side" of Count VIII was "money had and received for unjust enrichment," and that the parties had previously agreed that the count would be "rename[d] for the jury," to which the trial court responded "[t]hat's right."[4] Northern

---

has been unjustly enriched through the mistaken payment of money by the other party is an action at-law for money had and received.").

[4] In Count VIII of its petition, entitled "Accounting," Northern Farms claimed that it was "entitled to an order for a complete accounting of all financial transactions of the corporation . . . subject to the equitable powers of the Court so that the shareholders of Northern Farms, Inc. may have a fair resolution and accounting of all the assets diverted by W.K. Jenkins or his spouse, M. Earlene Jenkins . . . . That M. Earlene Jenkins has ratified or acquiesced in the fraudulent, deceptive and unconscionable practices of W.K. Jenkins, the former president of Northern Farms, Inc., and has accepted commingled and other funds from Northern Farms, Inc. for which said M. Earlene Jenkins and W.K. Jenkins would be unjustly enriched and for which both should be held accountable." In the prayer for

Farms also indicated its belief that "accounting issues" would remain to be determined by the court when addressing equitable claims. The trial court responded, "[t]hat's my understanding," and indicated that it would not be necessary for Northern Farms to present the accounting case "in its entirety" to the jury, but that whatever evidence was presented to the jury that applied to "the accounting" would be "take[n] into account [by the court] in the court-tried portion of the matter regarding the accounting." The Jenkinses did not object at the pre-trial conference to this proposed bifurcation of Count VIII or disagree that the parties had, in fact, agreed to such bifurcation.

The court held a final hearing on the Friday before the trial, scheduled for the following Monday, to take up last-minute matters and allow the parties to submit jury instructions. At that hearing, counsel for Northern Farms reiterated that "the last claim for relief . . . is unjust enrichment for money had and received," which was "[t]he only claim against" Mother. While counsel for the Jenkinses expressed some concerns over having separate trials, and specifically with the *order* in which matters would be tried, he again did not object to the "renaming" of Count VIII or the submission of the unjust enrichment claim to the jury and, in fact, ultimately acknowledged that there was a claim for unjust enrichment.[5]

The record demonstrates that the trial court believed Count VIII stated both a legal claim for unjust enrichment and an equitable claim for accounting, and, as part of its bifurcation of

relief for Count VIII, Northern Farms asked for an accounting of "all financial transactions involving the corporation to restore all assets and property diverted away from Northern Farms, Inc."

[5] When asked by the court if there was anything he wanted to "bring up, discuss" in this pre-trial hearing, the Jenkinses' counsel stated, "I completely object to doing the jury trial first and doing the accounting later on because everything that we're going to do in the accounting would pertain to the jury trial and, like I said, we get to the same thing, *money had and received*. If they don't have the money, if they didn't have any money at all and my clients didn't receive anything to their benefit, so *unjust enrichment* and all of that . . . is tied to the accounting part of the trial."

issues for trial,[6] the trial court granted Northern Farms' request to try the legal claims in Count VIII to the jury and rename the legal claims in Count VIII as claims for "money had and received for unjust enrichment." All of this happened well in advance of trial and not—as challenged in the point relied on—"for the first time at trial." Thus, the case does not present, as the Jenkinses claim, the misapplication of Rule 55.33,[7] "the rule allowing pleadings to be amended at trial to conform to the evidence." Rather, the trial court indicated its belief that Count VIII stated an equitable claim for accounting and a legal claim for unjust enrichment, allowed bifurcation of this count, and issued an order authorizing the renaming of the legal claim for purposes of the jury trial.[8]

The Jenkinses attempt on appeal to recast the trial court's actions by arguing that the second amended petition did not state a claim for unjust enrichment; thus, the trial court could not have allowed Northern Farms to rename Count VIII and proceed to try unjust enrichment to the jury. They argue that, to state a claim for unjust enrichment, Northern Farms had to file an amended petition, and because it did not do so before trial, the presentation of unjust enrichment to the jury must be treated as an amendment at trial to conform to the evidence. We will neither recast what the trial court did nor allow the Jenkinses to indirectly make a challenge they did not timely make below: arguing that Count VIII did not state a claim for unjust enrichment or that, even if it did, claims for unjust enrichment and accounting must be made in separate counts, and thus, unjust enrichment could not be presented to the jury. The Jenkinses never challenged the trial court's pre-trial bifurcation of claims and authorization of Northern Farms to proceed with

---

[6] "Unless circumstances clearly demand otherwise, trials should be conducted to allow claims at law to be tried to a jury, with the court reserving for its own determination only equitable claims and defenses" in a second trial following the jury trial, if necessary. *State ex rel. Leonardi v. Sherry*, 137 S.W.3d 462, 473 (Mo. banc 2004).

[7] All rule references are to the Missouri Court Rules (2015), unless otherwise noted.

[8] This decision should not be taken as approval of the trial court's conclusion that Count VIII stated claims for unjust enrichment or its order allowing the "renaming" of Count VIII without the petition being formally amended. The better path to take would have been to allow Northern Farms to file an amended written pleading, and to give the Jenkinses an opportunity to answer. Because the Jenkinses do not challenge this ruling, we do not determine whether it would constitute reversible error.

6

the claims of unjust enrichment at trial. The Jenkinses' "point fails to state the ruling being challenged . . . , and thus preserves nothing for review." *Greenwich Condo. Ass'n v. Clayton Inv. Corp.*, 918 S.W.2d 410, 417 (Mo. App. E.D. 1996); Rule 84.04(d)(1)(A) (indicating that each point relied on shall "identify the trial court ruling or action that the appellant challenges").

Following opening statements, in which Northern Farms mentioned a claim for unjust enrichment and money had and received, the Jenkinses moved for a mistrial, and now argue that they were "surprised and puzzled," and without an "opportunity to respond to such allegations" because those claims had not been pled in Northern Farms' petition. In response, Northern Farms argued that Count VIII did state a claim for unjust enrichment and that before trial the parties had agreed, and the court had ordered, that unjust enrichment be tried to the jury. The trial court denied the motion for mistrial. Contrary to the argument here and at trial, the Jenkinses' counsel was, in fact, well aware that Count VIII would be presented to the jury as "money had and received for unjust enrichment," and had acquiesced to this approach before trial. Having stood silent, and even assented to this approach before trial, the Jenkinses cannot now be heard to challenge the denial of relief at trial. "We will not convict the trial court of error that was, at least to some extent, invited by" the appellant. *See Story v. Story*, 452 S.W.3d 253, 257 (Mo. App. E.D. 2015); *Ard v. Shannon Cty. Comm'n*, 424 S.W.3d 468, 476 (Mo. App. S.D. 2014) (quoting *Leeper v. Scorpio Supply IV, LLC*, 351 S.W.3d 784, 795-96 (Mo. App. S.D. 2011)) ("'[A] party may not complain on appeal of an alleged error in which he joined, acquiesced or invited by his conduct . . . .'").

The point is denied.

## II. Northern Farms did not dismiss its claims for unjust enrichment against Mother.

The Jenkinses assert that the trial court erred in entering judgment against Mother on Northern Farms' claims for unjust enrichment because those claims arose from Count VIII,

7

which was originally denominated a count for "Accounting"—but which the trial court allowed Northern Farms to rename as a count for unjust enrichment—and following trial, Northern Farms dismissed Count VIII.

The parties disagree over the standard of review. Northern Farms argues that dismissal of counts following a jury trial is a discretionary act of the trial court, which would mandate application of the abuse of discretion standard. The Jenkinses argue that the interpretation of Rule 67.02, addressing the effect of a voluntary dismissal, is a legal question, which is reviewed de novo. Ultimately, the standard is irrelevant and the Jenkinses' argument fails because it is clear from the record that Northern Farms did not dismiss any of its legal claims that were tried to the jury, including unjust enrichment.

As noted *supra*, this case was bifurcated, with legal issues being tried to the jury and equitable issues reserved for later determination by the court. At a post-trial hearing, Northern Farms notified the court that it wished to "forgo and dismiss any claims for equitable relief." The court then entered judgment in the amount awarded by the jury, set out the thirteen separate jury verdicts, and ordered "that all claims and requests for relief by the parties not granted or addressed by this judgment are hereby denied." Mother argues that Northern Farms voluntarily dismissed Count VIII in its entirety, and the trial court, through the language in the judgment indicating that all claims not granted or addressed were denied, allowed the dismissal. But the record does not support Mother's argument.

Northern Farms' post-trial oral motion to dismiss clearly reflects the intent to dismiss only the equitable portions of Count VIII, i.e., the claim for accounting. Northern Farms noted that Count VIII had been "retitled with the [c]ourt's consent as an action for money had and received and unjust enrichment," and that Northern Farms wished to "dismiss the equitable claims that are left," including "the equitable accounting claim." Indeed, Northern Farms

8

referred to its "money had and received for unjust enrichment" claim as "a legal claim,"[9] and indicated that it wished to dismiss only "the equitable claims."

Plainly, there were equitable claims remaining following the trial on Northern Farms' legal claims. And in order to obtain a final judgment, the remaining claims needed to be resolved. *See ABB, Inc. v. Securitas Sec. Servs. USA, Inc.*, 390 S.W.3d 196, 200-01 (Mo. App. W.D. 2012) (indicating that judgment is not final when there are unresolved claims). Northern Farms chose to dispose of the remaining equitable issues by dismissing them. To the extent that there was an equitable claim remaining in Count VIII, it too needed to be dismissed. We do not see how dismissing the remaining equitable claims, if any, has the effect of dismissing the count in its entirety.

*Skyles v. Burge*, 830 S.W.2d 497 (Mo. App. E.D. 1992), upon which the Jenkinses rely, is distinguishable. There, the plaintiffs voluntarily dismissed a number of counts of their petition, and subsequently moved for summary judgment on one of the counts that had been dismissed. *Id.* at 498. After granting summary judgment on the count, the trial court later determined that "there was nothing before the court on which to base an award of summary judgment" and vacated the earlier award. *Id*. On appeal, the Eastern District affirmed, holding that "[p]laintiffs voluntarily dismissed [the count] without prejudice and did not revive it prior to the order of summary judgment. Accordingly, the order of summary judgment was void from the inception." *Id*. at 501. Again, this is manifestly not what happened here. Northern Farms received a jury verdict on the "renamed" Count VIII, after which it dismissed any equitable claim that might remain.

---

[9] "An action for money had and received is a remedy at law that is governed by equitable principles." *Ward v. Luck*, 242 S.W.3d 473, 476 (Mo. App. E.D. 2008); *Weltscheff v. Med. Ctr. of Independence, Inc.*, 604 S.W.2d 796, 801 (Mo. App. W.D. 1980) ("money had and received" is "an action at law").

To the extent that the Jenkinses are attempting to argue that, in the case of a count that alleges both equitable and legal claims, the voluntary dismissal of the equitable portions of the count necessarily effects the dismissal of all claims under that count, the Jenkinses would have to provide us with authority to support that proposition, which they have not done. "[A]n appellant is required to provide relevant and available legal authority in the argument or explain why such authority is not available." *Moseley v. Grundy Cty. Dist. R-V Sch.*, 319 S.W.3d 510, 513 (Mo. App. E.D. 2010).

The point is denied.

### III. The trial court did not err in not dismissing Northern Farms' claim of fraud and breach of fiduciary duty based on the statute of limitations.

Finally, the Jenkinses argue that the trial court erred in failing to grant their motion for directed verdict on Northern Farms' claims, because those claims are barred by the statute of limitations.[10] The Jenkinses argue that their son, Robert Jenkins, an officer of Northern Farms at all relevant times, and its president at the time of trial, knew of and ratified the transactions at issue in 1994 and 1998, respectively. Accordingly, the Jenkinses argue, because Northern Farms did not file its claims in the present action until May of 2006, the claims fall well outside the five-year statute of limitations for claims for breach of fiduciary duty under § 516.120(4).[11]

---

[10] The Jenkinses' points arguing the statute of limitations issue complain that "the trial court erred in refusing to dismiss" Northern Farms' claims. Because the Jenkinses only filed motions to dismiss before trial, normally we would review the claim under the standard that the "'petition should not be dismissed on the affirmative defense of the statute of limitations unless it is absolutely clear from the face of the petition that it is time barred.'" *Heidbreder v. Tambke*, 284 S.W.3d 740, 746 (Mo. App. W.D. 2009) (quoting *Doyle v. Crane*, 200 S.W.3d 581, 585 (Mo. App. W.D. 2006)). "The standard of review requires this court read the petition broadly, construe it in favor of the plaintiffs, and not allow dismissal unless it is clear from the face of the petition that the action is barred by the statute of limitations." *Id.* at 748. However, the Jenkinses rely entirely upon trial testimony in support of their argument, meaning that they are apparently challenging the trial court's denial of their motion for directed verdict, or, more specifically, entering judgment upon a jury's verdict when Northern Farms did not make a submissible case. Though not phrased artfully, we will review these points as claims premised on the trial court's failure to grant the Jenkinses' motion for directed verdict and post-trial motions as they relate to the statute of limitations.

[11] Unless otherwise noted, statutory citations are to the 2000 edition of the Revised Statutes of Missouri, as updated through the current Cumulative Supplement.

10

Northern Farms argues that, although Father raised the statute of limitations as an affirmative defense to the claims of breach of fiduciary duty, that defense became unavailable to Father because the trial court ordered Father's answer stricken as a discovery sanction and further ordered that Father would "not be allowed to oppose claims or support affirmative defenses" to Northern Farms' claims. "[T]he statute of limitations is an affirmative defense," which must be pled. *Rentschler v. Nixon*, 311 S.W.3d 783, 787 n.3 (Mo. banc 2010); Rule 55.08. Father has not challenged the sanction. And even if he had, he would carry a heavy burden to show that the sanction was an abuse of discretion. "Trial courts are vested with broad discretion regarding whether to impose sanctions for discovery violations, and we will not disturb the exercise of that discretion on appeal unless it is exercised unjustly." *Treetop Vill. Prop. Owners Ass'n v. Miller*, 139 S.W.3d 595, 601 (Mo. App. S.D. 2004).

Father argues that the trial court nevertheless "had authority to allow [Father] to present [his statute of limitations] arguments despite its earlier order striking his pleadings, . . . and plainly did so." In support of this proposition, Father points only to a portion to the transcript, from the morning trial began, in which the trial court held that the Jenkinses' final motion to dismiss was "denied," and overruled Northern Farms' motion to strike the motion as "moot." But this order denied the Jenkinses' final motion to dismiss, filed days before trial, which did not contain any reference to the statute of limitations. The other "motion" that the Jenkinses reference in their brief, the "Memorandum on the Statute of Limitation Issue," was stricken. We are not convinced that the trial court rescinded, *sub silentio*, its earlier order and determined that Father would be allowed to pursue the affirmative defense of statute of limitations. Therefore, we find that the statute of limitations was not an affirmative defense available to Father.

Mother, however, did not have her pleadings stricken and was not barred from presenting affirmative defenses. But she may have failed to preserve the issue at trial by raising it in a

11

motion for directed verdict.[12] While the Jenkinses argued in their motion for directed verdict that the fraud and breach of fiduciary duty claims were barred by the statute of limitations, as to the unjust enrichment count, they argued only that it was not properly pled. We see no reference to Count VIII, or any of the issues raised therein, as it relates to the statute of limitations argument. A party's "'failure to raise [an] issue[] as grounds for its motion for directed verdict preclude[] it . . . from obtaining appellate review . . . on these grounds.'" *Delacroix v. Doncasters, Inc.*, 407 S.W.3d 13, 43 n.21 (Mo. App. E.D. 2013) (en banc) (quoting *Hatch v. V.P. Fair Found., Inc.*, 990 S.W.2d 126, 137-38 (Mo. App. E.D. 1999)).

Mother nevertheless claims that, because the fraud and breach of fiduciary duty counts are barred by the statute of limitations, the unjust enrichment claims against her are also barred, as the claims against her are derivative of the fraud and breach of fiduciary duty claims. Thus, she claims there was no need for her to raise the statute of limitations defense as to the claims against her. Because, under the facts of this case, the statute of limitations defense fails whether applied to the underlying fraud and breach of fiduciary duty claims or the unjust enrichment claims against Mother, we need not decide whether the unjust enrichment claims are derivative of the fraud and breach of fiduciary duty claims.

The statute of limitations begins to run "after the causes of action shall have accrued." § 516.100. But a "cause of action shall not be deemed to accrue when the wrong is done or the

---

[12] Northern Farms also argues that the Jenkinses waived the issue by failing to submit a jury instruction on the statute of limitations. "Failure to request such an instruction constitutes an abandonment of that affirmative defense even though the statute of limitations is affirmatively pleaded." *Yeager v. Wittels*, 517 S.W.2d 457, 465-66 (Mo. App. 1974). The Jenkinses argue that the rule does not apply here, citing *Coburn v. Leon Industries, Inc.*, 764 S.W.2d 510, 512 (Mo. App. E.D. 1989), which held that, where "plaintiff's own evidence indicated that there was a question as to whether it was barred by the applicable statute of limitations," the defendant "was entitled to stand on its motion for directed verdict and not to offer an instruction to preserve its claim of error." *Coburn* has never been cited for this proposition. It also does not specify whether, where the defendants' cross-examination of the plaintiff's witnesses produces the relied-upon evidence, as is the case here, the evidence still qualifies as "plaintiff's own evidence." We assume, without deciding, that *Coburn* is good law and applies any time the evidence is adduced during the plaintiff's case-in-chief and the defense presents no evidence after the plaintiff rests.

technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment." *Id*. A cause of action is capable of ascertainment "'when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages.'" *State ex rel. Old Dominion Freight Line, Inc. v. Dally*, 369 S.W.3d 773, 778 (Mo. App. S.D. 2012) (quoting *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 584 (Mo. banc 2006)). "'At that point, the damages would be sustained and capable of ascertainment as an objective matter.'" *Id*. (quoting *Powel*, 197 S.W.3d at 584-85).

"'Because the capable[-]of[-]ascertainment standard is an objective one, where relevant facts are uncontested, the statute of limitations issue can be decided by the court as a matter of law.'" *Id*. (quoting *Powel*, 197 S.W.3d at 585). But where, as here, "'contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question of fact for the jury to decide.'" *Id*. at 778 n.7 (quoting *Powel*, 197 S.W.3d at 585). "To make that determination, we review the evidence in the light most favorable to the jury's verdict, giving the plaintiff the benefit of all reasonable inferences and disregarding all conflicting evidence and inferences." *Host v. BNSF Ry. Co.*, 460 S.W.3d 87, 104 (Mo. App. W.D. 2015). "We will reverse the trial court only if there is a 'complete absence of probative fact to support the jury's conclusion.'" *Id*. (quoting *Kerr v. Vatterott Educ. Ctrs., Inc.*, 439 S.W.3d 802, 809 (Mo. App. W.D. 2014)). "In other words, a directed verdict . . . is appropriate if reasonable minds could *only* find in favor of the defendant." *Id.*

As to the fraud and breach of fiduciary duty claims, here, there is ample evidence that the cause of action did not accrue until late 2001 or 2002, and that Northern Farms' counterclaim,

which was filed in March of 2006, fell within the five-year statute of limitations period.[13] Robert Jenkins repeatedly testified that Father handled all of the corporation's financial matters and had control of its financial statements, and that Robert believed, at the time that the relevant transactions were entered into, that Father, acting in his capacity as the president of Northern Farms, would use the proceeds from the transactions in question to benefit Northern Farms and not convert it to his own benefit. He further testified that he first became suspicious in late 2001 when Father refused a request from one of his sons to make corporate assets available and subsequently refused to account for why there was no money available. Then, in 2002, Mother brought to Robert Jenkins's attention substantial sums of money that Father had converted to his own benefit. This was sufficient testimony for a trier of fact to determine that Father's conduct was not ascertainable until late 2001 or 2002. "Because a fiduciary relationship creates a false sense of security, only actual discovery of the fraud begins the period of limitations." *Cmty. Title Co. v. U.S. Title Guar. Co., Inc.*, 965 S.W.2d 245, 252 (Mo. App. E.D. 1998).

Similarly, arguments that the statute of limitations bar the unjust enrichment claims against Mother fail based on the evidence presented. Whether termed as unjust enrichment or money had and received, the count sounds in quasi-contract. *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. App. W.D. 2014) ("Claims for money had and received and unjust enrichment are both founded upon equitable principles whereby the law implies a contract [referred to as quasi-contract] to prevent unjust enrichment."). The elements of such a cause of action are: "'(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under

---

[13] Northern Farms' second amended counterclaim was not filed until 2012. But, absent circumstances the Jenkinses do not argue are present here, an "amended petition relates back to the date on which [the] original petition was filed." *Kingsley v. McDonald*, 432 S.W.3d 266, 271 (Mo. App. W.D. 2014).

14

circumstances in which retention without payment would be inequitable.'" *Pitman v. City of Columbia*, 309 S.W.3d 395, 402 (Mo. App. W.D. 2010) (quoting *White v. Pruiett*, 39 S.W.3d 857, 863 (Mo. App. W.D. 2001)).

Here, Robert Jenkins's testimony established that Mother believed that Father was behaving irrationally, that Father was destroying the family, and that she initially disavowed any claim to the misappropriated funds and attempted to help recover the money for Northern Farms. It was not until 2007 that Mother asserted her right to the property at issue in the lawsuit, and it became clear that she was no longer an ally in Northern Farms' efforts to reclaim any fraudulently obtained funds. Accordingly, a trier of fact could have determined that Mother had not accepted and appreciated the benefit conferred by any fraudulent transactions until after the lawsuit had already commenced. Thus, the statute of limitations defense does not bar the claims against Mother.

The point is denied.

### Conclusion

Because we find that the trial court committed no error, the judgment is affirmed.

_____
Karen King Mitchell, Presiding Judge

Lisa White Hardwick and Anthony Rex Gabbert, Judges, concur.

15