

# In the Missouri Court of Appeals
## Eastern District

**DIVISION FOUR**

| | | |
|---|---|---|
| BARBARA J. BONIN, as Personal Representative for the ESTATE OF THOMAS R. KEENER, | ) ) ) ) | No. ED112704 |
| Respondent, | ) ) | Appeal from the Circuit Court of Jefferson County |
| v. | ) ) | Cause No. 21JE-PR00131 |
| JANIE GOULD, DARRIN PHILLIPS, and AMANDA PHILLIPS, | ) ) ) | Honorable Katherine Hardy-Senkel |
| Appellants. | ) ) | Filed: May 6, 2025 |

Janie Gould, Darrin Phillips, and Amanda Phillips (collectively, "Stepchildren") appeal the circuit court's judgment finding Stepchildren exercised undue influence over Thomas Keener, converted his funds for their personal use, and awarded Keener's personal representative attorney's fees. Stepchildren argue that the circuit court erroneously awarded attorney's fees and misapplied the law of undue influence and unjust enrichment. This Court finds the circuit court erred in awarding attorney's fees but affirms the remainder of the judgment.

## Background

Keener was an 85-year-old widower with three daughters and two grandchildren. Keener also had stepchildren from his third wife. At the time of all relevant events, Keener was in poor

health. He suffered from Parkinson's disease, congestive heart failure, chronic obstructive pulmonary disease, severe hypoxia, transient ischemic attacks, pneumonia, and hypertension.

On September 24, 2020, Keener's home sustained substantial damage in a fire. Keener moved into Gould's home and resided there with Stepchildren until the end of his life.

Following the fire, Keener's insurance company issued him money for temporary living expenses. The insurer also issued a check to Keener's mortgage lender for the residence. The mortgage lender applied the funds to the outstanding mortgage and then refunded the remaining funds to Keener.

In November 2020, Amanda Philips, after testing positive for COVID-19, took Keener to the bank and directed him to open a joint checking account with her as a joint owner. Keener deposited the funds from the insurer into this account. After Keener deposited his insurance proceeds, Amanda Philips used those funds for personal expenses.

Shortly thereafter, Keener also contracted COVID-19. He was diagnosed with pneumonia in both lungs and his hypertension worsened. As Keener's health declined, Gould arranged a meeting with an attorney to draft beneficiary deeds for Keener's home and another parcel of property.

The attorney first hosted a web-based call, which Keener attended from Gould's home. Gould, Amanda Phillips, and one of Keener's daughters attended the meeting. During that meeting, the attorney had to repeatedly explain the estate plans to Keener.

Meanwhile, Keener's health issues continued to worsen. Keener began experiencing seizures, causing vision loss, facial drooping, and memory loss. His oxygen levels were extremely low. His COPD worsened, and he developed severe hypoxia, which resulted in confusion, restlessness, and difficulty breathing.

Keener was no longer able to remember that one of his daughters had moved to California. In January 2021, Keener was unable to focus or maintain a conversation with his visiting grandson. Stepchildren urged Grandson to limit his visit and leave the house because the attorney was going to arrive later that day.

After Grandson departed, the attorney arrived at Gould's house with beneficiary deeds for each property, a power of attorney, and a document to transfer title of Keener's van. The attorney never discussed Keener's wishes without Stepchildren present. One beneficiary deed granted Keener's home to the Phillips family. The other beneficiary deed granted Keener's other parcel of property to Gould. Keener did not read the deeds or the power of attorney, and he asked whether he was signing a will. Keener's health had deteriorated to the point that he was unable to use a signature to sign the deeds; he only could make a mark. Barbara Bonin, one of Keener's daughters and the personal representative of his estate, was not invited to any meetings with the attorney nor the execution of the beneficiary deeds.

Two days after signing the deeds, Keener passed away. Hours after Keener passed, Gould told Bonin that she would like to have Keener's second piece of property, but she did not mention that the beneficiary deeds were already recorded in her favor.

After Keener's death, another check with insurance proceeds arrived. Amanda Phillips forged Keener's endorsement and deposited it into the joint account. The Phillips family continued using the joint account to pay their personal credit card debt. When a second check arrived from the insurer, Gould forged Keener's signature and deposited the funds into her own account.

Keener's probate estate was opened in March 2021, and Bonin, was appointed as the personal representative. Bonin, on behalf of the Estate, filed a petition to discover assets for

undue influence, to set aside the beneficiary deeds, and for conversion and unjust enrichment of the insurance proceeds.

Following a bench trial, the circuit court issued its judgment finding that the beneficiary deeds to both properties were void because they were procured by undue influence, and that Stepchildren were unjustly enriched by the insurance proceeds. The circuit court also ordered Stepchildren to pay a portion of the Estate's attorney's fees. Stepchildren appeal.

**Discussion**

*Attorney's Fees*

Stepchildren claim that the circuit court had no authority to award the estate attorney's fees. A circuit court's decision awarding attorney's fees generally is reviewed for an abuse of discretion. *Hendrix v. City of St. Louis*, 636 S.W.3d 889, 903 (Mo. App. 2021). However, whether a circuit court has the authority to award attorney's fees is a question of law reviewed *de novo. Yes Chancellor Farms, LLC v. Merkel*, 670 S.W.3d 214, 226 (Mo. App. 2023). "Missouri courts follow the American Rule, which provides that, absent statutory authorization or contractual agreement, with few exceptions, parties bear the expenses of their own attorney fees." *Id*. (quoting *Wilson v. City of Kansas City*, 598 S.W.3d 888, 896 (Mo. banc 2020)).

Because no statute or contract authorizes attorney's fees here,[1] the circuit court awarded attorney's fees under the collateral litigation exception to the American Rule. "For a party to recover under the collateral litigation exception, that party must have incurred the fees as a result *of suing, or being sued by, an outside third party*." *In re Est. of Cannamore*, 44 S.W.3d 883, 885 (Mo. App. 2001) (emphasis in original). When "the natural and proximate result of a wrong or

---

[1] Section 473.340.3, RSMo 2016, states, in part, that the circuit court "may enter a judgment for all losses, expenses and damages sustained, if any, but *not including attorney fees*, if it finds that the property was wrongfully detained, transferred or otherwise disposed of." (Emphasis added).

breach of a duty is to involve the wronged party in collateral litigation, reasonable attorney's fees necessarily and in good faith incurred in protecting itself from the injurious consequences thereof are proper items of damages." *Id.*

The circuit court awarded attorney's fees because Stepchildren's claims to the properties forced the Estate to litigate payment issues with the insurance company. Yet, the record does not reflect any lawsuit involving the insurer, nor does the legal file in this case suggest that the insurer was involved in the discovery of assets proceeding. The insurer's role in the litigation of the Estate was that of an indemnitor, reimbursing the estate for fire damage pursuant to its insurance policy. The Estate communicated with the insurer to facilitate proper payments of insurance proceeds. This communication may have been conducted by the Estate's attorney, but this does not constitute collateral litigation. Because there was no collateral litigation in this case, the circuit court erred in awarding the Estate attorney's fees.

*Undue Influence*[2]

Next, Stepchildren claim that the circuit court erroneously declared or applied the law of undue influence because it never explicitly stated they "destroyed Keener's free will." Stepchildren argue that merely taking an active role in assisting Keener to execute documents and manage his benefits does not rise to the level of undue influence.

This Court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re Estate of Hock*, 322 S.W.3d 574, 579 (Mo. App. 2010). A claim that the judgment

---

[2] Stepchildren raise one point for each of the two beneficiary deeds. Their two points challenge the circuit court's declaration or application of the law of undue influence for each deed. Because the points raise identical issues, they are reviewed together.

erroneously declares or applies the law involves review of the propriety of the circuit court's construction and application of the law. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012).

"In a court-tried case, whether a person exercised undue influence over another is a factual determination for the [circuit] court." *Wilson v. Trusley*, 624 S.W.3d 385, 401 (Mo. App. 2021) (quoting *Watermann v. Eleanor E. Fitzpatrick Revocable Living Tr.*, 369 S.W.3d 69, 76 (Mo. App. 2012)). This Court defers to the circuit court's "assessment of the evidence" and its "determination of credibility." *Faatz v. Ashcroft*, 685 S.W.3d 388, 396 (Mo. banc 2024) (quoting *Johnson v. State*, 366 S.W.3d 11, 18-19 (Mo. banc 2012)).

The circuit court's judgment quoted the appropriate standards for determining whether there was undue influence in the procurement of a deed.[3] The circuit court then detailed the facts surrounding Keener's execution of the beneficiary deeds to Stepchildren. The circuit court found that, *inter alia*, Keener was a hospice patient suffering with extremely poor mental and physical health. Stepchildren controlled Keener's daily life, including his interactions with other individuals and his medication. Stepchildren scheduled a meeting with an attorney to discuss beneficiary deeds for Keener's two properties without Keener's knowledge. Keener never spoke privately with that attorney nor was he able to review the legal documents independently. Further, Stepchildren exhibited hostile feelings towards the Estate's expected recipients by keeping their legal maneuverings secret.

The circuit court's findings demonstrate that Keener's free agency and voluntary action were thwarted by Stepchildren. There was no requirement that the circuit court make an explicit finding that Stepchildren destroyed Keener's free will. The circuit court recited the correct legal

---

[3] "The test is whether the grantor's free agency and voluntary action were thwarted." *Pike v. Pike*, 609 S.W.2d 397, 402 (Mo. banc 1980).

6

standard and its findings fall within those requirements. The circuit court did not misapply the law.

<em>Unjust Enrichment</em>

Finally, Stepchildren claim the circuit court erroneously declared or applied the law of unjust enrichment. Stepchildren argue that Keener never conferred a benefit upon them because the funds at issue were not Keener's. Rather, Stepchildren argue that the money at issue was owned by the insurer and was deposited into a bank account jointly held by Keener and Amanda Phillips thereby converting the funds to the joint ownership of the account holders under § 362.470, RSMo 2016. Stepchildren argue that it was the insurer, and not Keener, that conferred any benefit.

"Unjust enrichment occurs [when] a benefit is conferred upon a party under circumstances in which retention of that benefit without paying its reasonable value would be unjust." *Lambley v. Diehl*, 603 S.W.3d 346, 361 (Mo. App. 2020) (quoting *Pitman v. City of Columbia*, 309 S.W.3d 395, 402 (Mo. App. 2010)). "To establish a claim for unjust enrichment, a plaintiff must prove: (1) he conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Hammond v. Toole*, 644 S.W.3d 289, 297 (Mo. App. 2022) (quoting *Hunt v. Estate of Hunt*, 348 S.W.3d 103, 111 (Mo. App. 2011)).[4]

---

[4] Although not specifically raised by either party, this Court notes that Keener's claim is more appropriately considered as a claim for money had and received. Unjust enrichment and money had and received claims are very similar claims founded upon equitable principles that sound in quasi-contract. *Northern Farms, Inc. v. Jenkins*, 472 S.W.3d 617, 627 (Mo. App. 2015). A money had and received "action lies where the defendant has received or obtained possession of the money of the plaintiff, which, in equity and good conscience, he ought to pay over to the plaintiff." *Invs. Title Co. v. Hammonds*, 217 S.W.3d 288, 293-94 (Mo. banc 2007) (quoting *Webster v. Sterling Finance Co.*, 173 S.W.2d 928, 931 (Mo. banc 1943)).

7

Stepchildren's argument that Keener could not have conferred a benefit on them because the money deposited into the joint bank account belonged to the insurer is nonsensical. Stepchildren's argument disregards Keener's ownership of his insurance proceeds. The funds at issue originated with the insurer, but they were issued to and owned by Keener. Keener's funds were then deposited into the joint bank account, thereby conferring a benefit on Amanda Phillips.

Section 362.470 does not change this result. That statute provides that funds deposited into a joint bank account become subject to a joint tenancy. Stepchildren believe that when the money was deposited into the account, it became jointly owned by Keener and Amanda Phillips, and therefore, any withdrawals by Phillips were withdrawals of her own money and not benefits conferred by Keener. This argument places its focus on the wrong transaction. The benefit was conferred when Keener's money was deposited into the joint account, not when Amanda Phillips withdrew it. Stepchildren only had access to those funds as a result of the deposit.

Amanda Phillips does not dispute that she knew the insurance checks were issued to Keener and that those funds were supposed to be used to rebuild Keener's home. However, rather than using the funds for the acknowledged purpose, Amanda Phillips used those funds for the benefit of Stepchildren. As a result, the circuit court did not err in finding Keener conferred a benefit on Stepchildren.

## Conclusion

The circuit court's judgment awarding the Estate attorney's fees is reversed. The remainder of the circuit court's judgment is affirmed.

_____
John P. Torbitzky, Presiding Judge

Robert M. Clayton III, J., and
Michael S. Wright, J., concur.

9